The STATE of Ohio, Appellee,

v.

NEWLAND, Appellant.

[Cite as *State v. Newland* (1996), 113 Ohio App.3d 832.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 94CA860.

Decided Aug. 22, 1996.

*Rocky A. Coss,* Highland County Prosecuting Attorney, for appellee.

*Joseph L. Hale,* for appellant.

STEPHENSON, Judge.

This is an appeal from judgments of conviction and sentence entered by the Common Pleas Court of Highland County upon a plea of guilty, convicting James Newland, defendant-appellant, on two counts of trafficking in marihuana in violation of R.C. 2925.03(A)(1). The following error is assigned for our review:

"The trial court abused its discretion and committed reversible error in overruling the defendant-appellant's motion to withdraw the subject guilty pleas in that the defendant-appellant had provided the trial court with substantial evidence 1.) that the defendant-appellant was under the influence of morphine at the change of plea hearing, 2.) that the guilty pleas were induced by an improper promise made by the defendant-appellant's then-attorney, 3.) that the defendant-appellant had consistently maintained his innocence of the charges and could offer alibi evidence in support thereof, and 4.) that the defendant-appellant's act of making the subject guilty pleas was the result of ineffective assistance of counsel."

The record reveals the following facts pertinent to this appeal. On June 9, 1993, the Highland County Grand Jury indicted appellant on various charges spanning three separate criminal cases: one count of receiving stolen property in violation of R.C. 2913.51(A) in case No. 93CR75, one count of trafficking in marihuana in violation of R.C. 2925.03(A)(1) in case No. 93CR87, and six counts of trafficking in marihuana in violation of R.C. 2925.03(A)(1) in case No. 93CR88.[1] Appellant was arraigned on June 15, 1993, and entered pleas of "not guilty" to all charges against him. Initially, appellant was represented in these proceedings by attorney Jeffrey J. Hoskins. As the proceedings wore on, however, appellant retained new counsel, James H. Rion, from Dayton, Ohio.[2]

On April 29, 1994, a pretrial hearing was held on a motion *in limine*. Rion was unable to attend this hearing and sent his associate, L. Patrick Mulligan, to represent appellant in his stead. Although appellant was said to have been "adamant" about not plea bargaining in this case, Mulligan got his consent to an agreement with the prosecutor whereby appellant would plead guilty on two counts of trafficking and the remaining charges against him would be dismissed

---

1. Other counts in the indictment in case No. 93CR88 involved a second individual, Jeremy S. Montgomery, who has no relevance to these proceedings.

2. There was apparently no dissatisfaction or animosity which led to appellant dismissing Hoskins as his attorney and retaining Rion. Hoskins continued to describe appellant "as a friend" and appellant explained that he retained other counsel only because he was not persuaded Hoskins could "handle it." Appellant also expressed that he wanted "one of these big old high priced [a]ttorneys" from out of town to represent him. Nevertheless, appellant continued to seek the advice of Hoskins throughout the proceedings below.

*nolle prosequi.*[3] Defense counsel would then file for shock probation thirty days after the sentence commenced and the state would recommend that it be granted. The court below proceeded to question appellant as follows with respect to the plea agreement:

"The court: * * * Now, I believe that constitutes the entire agreement that has been submitted. Do you understand all that, and do you have any questions?—I'm speaking to you, Mr. Newland.

"DEFENDANT: Y[e]s.

"THE COURT: Yes, what?—Let's ask them one at a time.—Do you understand the agreement?

"DEFENDANT: Yes.

"THE COURT: Do you have any questions?

"DEFENDANT: Yes.

"THE COURT: All right.

"[Defense counsel] Which question?

"WHEREUPON: The defendant and his counsel * * * then conferred at counsel table.

"DEFENDANT: No, I don't.

"THE COURT: Are you sure?

"DEFENDANT: Yeah."

There appeared to be some degree of confusion on appellant's part in responding to questions put to him by the court. The impetus for that confusion was later revealed as follows during subsequent questioning:

"THE COURT: Are you presently under the influence of drugs?

"DEFENDANT: Yes.

"THE COURT: What drugs are you taking?

"DEFENDANT: Morphine.

"THE COURT: Morphine? Is that because of the pain in your back?

"DEFENDANT: Yes.

" * * *

"DEFENDANT: Yes. I've had eight back operations."

---

3. Appellant would also be required to pay a mandatory $1,000 fine on both counts to which he pled guilty and would also forfeit the equity he had in a "mini-mart" in Hillsboro, Ohio.

Further inquiry was made as to whether the morphine was acting so as to cloud appellant's mind and prevent him from being aware of the proceedings taking place around him. Appellant responded in the negative and the lower court accepted his plea. The case was then continued to May 27, 1994, when the matter came on for sentencing. Appellant appeared with counsel (Rion) at the hearing and, almost immediately, indicated to the court that he wished to discharge his attorney and withdraw his previous guilty plea. Appellant explained that he felt Rion "didn't perform his duty" and that he wanted "to go to trial on this." The case was continued, again, so that appellant could find a different attorney. On August 1, 1994, new counsel entered an appearance and filed a formal motion on behalf of his client to withdraw appellant's guilty plea for the following reasons:

"1. The defendant, James Newland, in entering the aforementioned guilty pleas, did not act knowingly, voluntarily or intelligently, as required by law.

"2. The defendant, James Newland, in entering the aforementioned guilty pleas, was unduly pressured to do so by attorney Patrick Mulligan, who was 'filling in' for his retained counsel, John Rion.

"3. The defendant, James Newland, in entering the aforementioned guilty pleas, did not have effective assistance of counsel, a right guaranteed to the defendant by the Sixth Amendment to the United States Constitution."

A number of exhibits were submitted in support of this motion. Appellant's affidavit states, among other things, that he was on increased pain medication at the time of the April 29, 1994 hearing and "was in no physical or mental condition to consider waiving my constitutional rights to a jury trial and pleading guilty to crimes I did not commit." This was partially corroborated with a letter from Dr. Jeffry A. Spain, M.D., who explained as follows:

"I have been treating Mr. Newland for back pain since June 1993. He has chronic severe back pain following eight back surgeries. For pain control, Mr. Newland takes MS–Contin 420mg per day and amitriptyline 75mg at bedtime. On April 18, 1994, Mr. Newland as seen at my office and his doses were *increased* because of inadequate pain control. I understand that shortly after this, Mr. Newland fell asleep during a court appearance and has been held in contempt. I would like the court to understand that Mr. Newland's drowsiness was, to a reasonable degree of medical certainty, related to his increased medication dosages and, therefore, not entirely under his control." (Emphasis added.)

Appellant also asserted in his affidavit that Mulligan had "pressured" him into the plea bargain. Although appellant was unable to recall the specifics of the April 29, 1994 hearing, he recounted that he did not want to plead guilty. This too was corroborated by Rion who, by way of deposition, testified that appellant

was "absolutely not" interested in making any kind of plea and was showing "great resistance" to any such negotiations. Rion further stated that he was unaware of the plea bargain until after it had been made and that his associate, Mulligan, never contacted him about the negotiations. It was also explained that the only reason Mulligan was sent to the hearing, rather than Rion attending it himself, was because the sole issue set to be discussed that day was a motion *in limine* and Rion was using the time back at his office to prepare for the upcoming trial. Rion testified that he "fired" Mulligan from his firm over the way appellant's case was handled and that he "definitely [does] not * * * send someone down to do a motion hearing and end up pleading the guy guilty."

The matter came on for a hearing on October 7, 1994, at which time evidence was adduced to the effect that appellant had relied substantially on the advice of his wife and the promises made by Mulligan before agreeing to enter the guilty plea. Victoria Newland testified that she has to give her husband seven morphine tablets every day before appellant can get out of bed and that, two days prior to the April 29, 1994 hearing, his pain medication had been increased and that he had been prescribed sleeping pills. She described her husband as "so drugged up" on the day of the plea bargain that she "kept havin' to jar him awake." The witness recounted the following exchange between appellant and Mulligan on that date:

"Q. Were you present when Attorney Mulligan * * * STRIKE THAT.

"Q. While you were present at the discussions with Attorney Mulligan and your husband, did Attorney Mulligan ever promise or guarantee any specific sentence from this Court?

"A. He told me that it was going to be written in the letter form, that we would receive one, where it stated that they was going to give Jim thirty (30) days, and that was going to be it. On the thirtieth day, he told that I could go and pick him up.

"Q. Okay. Now, you were physically present * * *

"A. Yes.

"Q. * * * when that was discussed with your husband?

"A. Yes.

"Q. Did you get the impression from what you heard and how you observed it being told to your husband, did you get the impression that that was a promise or a guarantee or something that was etched in stone?

"A. Yes.

"Q. Do you believe that the representation being made to your husband, that he would only serve thirty days, was one factor in his pleading guilty?

"A. Actually, he didn't know really what was goin' on, I don't think, because when we left from here, he was cryin', I was cryin', because I realized that he had got up here and said that he was guilty, and I know that he is not a drug dealer! And, ah * * * (WITNESS STARTED CRYING)."

Appellant's tenuous consent to the plea bargain collapsed when a probation officer, conducting the presentence investigation, visited appellant at his home and allegedly advised him he "was gonna do six months" rather than the thirty days which had been promised. The probation officer then supposedly instructed appellant to "get up there and withdraw [his] plea." Mark Huff, the probation officer, testified that he met with appellant twice during the presentence investigation and that on neither occasion did appellant seem upset with the plea bargain. The witness conceded, however, that he told appellant that it would take "thirty to sixty days to decide whether to grant the motion [for shock probation]" above and beyond the thirty days which appellant would have served incarceration. It was this additional time of which appellant and his wife were, apparently, unaware that led to their disenchantment with the plea agreement.

On October 19, 1994, the lower court entered judgment overruling the motion to withdraw guilty plea. In so ruling, the court opined that appellant was not "incapacitated by the medication" he was taking and had "knowingly, intelligently and voluntarily enter[ed] his plea of [g]uilty." The matter came on for sentencing at which time appellant was given a definite term of one and one-half years on both the remaining counts against him. A judgment to that effect was entered on November 2, 1994, and this appeal followed.

■ Appellant argues in his assignment of error that the lower court erred in not granting his motion to withdraw guilty plea. We agree. Our analysis begins with Crim.R. 32.1, which provides that a motion to withdraw a guilty plea must be made before sentence is imposed. After sentencing, such relief is permitted only to correct a "manifest injustice." *Id.* The Ohio Supreme Court has ruled that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715, paragraph one of the syllabus. Nevertheless, it has been acknowledged that a presentence motion to withdraw a guilty plea should be "freely and liberally granted." *Id.* at 527, 584 N.E.2d at 719; see, also, *e.g., State v. Peterseim* (1980), 68 Ohio App.2d 211, 213, 22 O.O.3d 341, 342–344, 428 N.E.2d 863, 865, citing *Barker v. United States* (C.A.10, 1978), 579 F.2d 1219, 1223; *State v. Snider* (June 26, 1996), Meigs App. No. 95CA11, unreported, 1996 WL 368216; *State v. Hilton* (July 12, 1995), Summit App. No. 16979, unreported, 1995 WL 422754; *State v. Palatas* (May 12, 1995), Montgomery App. No. 14735, unreported, 1995 WL 276116. The decision to grant or deny such a motion lies within the sound discretion of the trial court, *Xie, supra,* at paragraph two of the syllabus, and we will reverse that decision

only if there has been an abuse of discretion. See *State v. Sunnycalb* (Nov. 20, 1995), Butler App. No. CA95–04–059, unreported, 1995 WL 684109; *State v. Fluckiger* (June 13, 1994), Butler App. No. CA94–02–041, unreported, 1994 WL 250116. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335; *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148. Although this is a difficult standard to meet, we readily find that it has been met in the cause *sub judice.*

■ There was substantial and uncontroverted evidence below that appellant was heavily medicated during the course of these proceedings. At some points, he had difficulty even remaining awake in court. A review of the transcript of the April 29, 1994 hearing clearly shows confusion on appellant's part as to what was being said and what was taking place. Rion testified that his client was on enough medication that week to "have caused an elephant to lay down." This would be sufficient in and of itself for us to critically review the trial court's decision not to allow the guilty plea to be withdrawn. However, there is more.

The plea agreement was negotiated, and appellant was "advised" to accept it, by somebody who was not even his counsel of record. Rion (appellant's actual attorney) was neither consulted during the negotiations nor notified about the agreement until after it had been consummated. The parties were present that day for a hearing on a motion *in limine* and nobody expected that a plea bargain would be discussed and finalized. However, Mulligan (an associate unfamiliar with the case and sent only to handle a pretrial matter) negotiated the plea on his own. There is also every indication that he pressured appellant into accepting the agreement. Both Rion and Hoskins (appellant's first attorney) stated that appellant had been steadfast in his refusal to plea bargain and wanted to take the case to trial. Appellant stated that he was "pressured" into the plea bargain by Mulligan and even Rion described his former associate as "unmercifully prevailing upon the client to plead guilty." Rion confirmed that he later fired Mulligan over his handling of the cause *sub judice.* Finally, there was evidence adduced below that Mulligan either misrepresented to appellant or failed to disclose to him and his wife how much time he would have to serve in prison before being released.

A defendant need only show "a reasonable and legitimate basis" for the withdrawal of the plea. *Xie, supra,* 62 Ohio St.3d at 527, 584 N.E.2d at 719–720. Given the facts and circumstances of this case, we find that appellant did establish such basis below. The decision of the trial court denying him the opportunity to withdraw his plea was unreasonable and an abuse of discretion.

Appellant's assignment of error is sustained and the judgment of the trial court is reversed. The cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETER B. ABELE, P.J., and HARSHA, J., concur.