THE STATE OF OHIO, APPELLEE, *v.* MORELAND, APPELLANT.

[Cite as State *v.* Moreland (1990), 50 Ohio St. 3d 58.]

(No. 88-1982—Submitted January 23, 1990—Decided April 4, 1990.)

*Lee C. Falke,* prosecuting attorney, *Ted E. Millspaugh* and *Walter F. Ruf,* for appellee.

*Randall M. Dana,* public defender, and *Jane P. Perry,* for appellant.

DOUGLAS, J. Dayron Talbott was the state's only eyewitness to the crimes committed on November 1, 1985. Prior to Dayron's testifying, defense counsel requested, and was denied, an opportunity to inquire of the witness and the opportunity to present other witnesses concerning the ability of Dayron to testify truthfully.

Additionally, appellant moved for an independent psychiatric examination of Dayron to assist the panel in its competency determination. This motion was also denied.

The panel then conducted a short interview with Dayron. This interview took place in chambers and appellant and all counsel were present. The panel concluded that Dayron was competent to testify.

## I

Appellant, in his first proposition of law, contends that since Dayron was subject to repeated pretrial questioning by the police and the prosecution, Dayron was rendered incompetent to testify. Further, appellant cites to portions of the record to suggest that Dayron was subjected to "improper influences" by family members. Finally, appellant relies on the fact that Dayron made inconsistent statements in support of the argument that "improper influences" came to bear on Dayron's ability to accurately receive just impressions of the facts, or to relate

those facts truthfully. According to appellant, the evidence he sought to present at a competency hearing related to Dayron's competency as a witness and, thus, to the admissibility of Dayron's testimony. Hence, reasons appellant, a full evidentiary hearing on Dayron's competency should have been held and an independent mental examination of Dayron should have been allowed. Appellant argues that the failure to conduct the hearing and allow the mental examination requires a reversal of his capital convictions.

We do not agree. Evid. R. 601 provides in relevant part:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * *[.]"

Judge Kessler, a member of the three-judge panel which tried appellant, responded to appellant's contentions regarding the requested competency hearing as follows:

"Well, the Court feels that under the Rules of Evidence, specifically Rule 601 * * * that every person is competent to be a witness except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions from facts.

"Here we have a child who was in fact eleven years old when the events occurred and will soon be twelve. He appeared to me to be alert, bright, intelligent. The other matters that you bring in we feel do not go to competency but would go to the *credibility*. * * *" (Emphasis added.)

We find, as did the court of appeals, that the panel did not abuse its discretion in denying appellant's mo-

tion for a competency hearing. Absent a finding that the panel abused its discretion and that the appellant was materially prejudiced thereby, this court should be slow to interfere with the panel's determination. See *State* v. *Hymore* (1967), 9 Ohio St. 2d 122, 128, 38 O.O. 2d 298, 302, 224 N.E. 2d 126, 130, certiorari denied (1968), 390 U.S. 1024.

"The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *." (Citations omitted.) *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149.

In the case at bar, the trial court did conduct an interview with Dayron which showed that Dayron could distinguish between truth and falsity. However, the trial court did not fully inquire into whether Dayron could accurately relate facts. We do not see how this failure rises to the level of an abuse of discretion particularly where, as here, the witness is presumed to be competent and, hence, the court was not required to interview the witness at all. Further, all the evidence that appellant wishes to introduce in a competency hearing relates to whether Dayron Talbott is to be believed. Therefore, appellant's evidence goes to the *credibility* of Dayron as a witness rather than to the *admissibility* of Dayron's testimony.

As to the requested psychiatric examination of Dayron, we have stated that the matters appellant wished to introduce in the competency hearing were actually matters relating to Dayron's *credibility* as a witness and not matters concerning Dayron's competency to testify.

Appellant also seeks a reversal of his convictions, in his fifth proposition of law, based upon the panel's refusal

to admit opinion testimony of an expert witness on the issue of Dayron's susceptibility to suggestion and influence. While the panel did allow appellant to attack Dayron's credibility, appellant was not allowed to attack Dayron's credibility by way of expert testimony.

In *State* v. *Boston* (1989), 46 Ohio St. 3d 108, 545 N.E. 2d 1220, syllabus, we held:

"An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."

*Boston* stands for the proposition that expert testimony cannot be used to show that a child is telling the *truth* or that the child accurately testified. We came to this conclusion because the trier of fact, and not the expert, is burdened with assessing the credibility and veracity of witnesses. *Id.* at 128-129, 545 N.E. 2d at 1240.

Appellant's contentions present us with the question whether expert testimony can be used to show that a child is *lying*. For the reasons stated in *Boston,* we hold that an expert may not testify as to the expert's opinion of the truth or falsity, or accuracy or inaccuracy, of the statements of a child declarant. Applying this court's holding in *Boston,* it would have been error to allow the testimony of appellant's expert witness, as the panel was charged with the duty of assessing the credibility of witnesses. Accordingly, appellant's first and fifth propositions of law are not persuasive.

## II

Next, in his second proposition of law, appellant assails his convictions based upon the testimony of the state's expert witness concerning the results of an atomic absorption test which was conducted to determine the presence or absence of gunshot residue on appellant's hands. Specifically, appellant argues that once the witness testified that he could not conclude with reasonable certainty or probability that appellant fired a gun, the expert's testimony is irrelevant and incompetent and, hence, inadmissible.

Initially, we note that appellant did not raise this issue in the court of appeals. Appellant's failure to raise this issue constitutes a waiver of error, if any, involved. *State* v. *Broom* (1988), 40 Ohio St. 3d 277, 288-289, 533 N.E. 2d 682, 695-696. Therefore, our discretionary review of appellant's proposition must proceed, if at all, under the plain error analysis of Crim. R. 52(B). *Id.* Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. See, *e.g., State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804, paragraph two of the syllabus; *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 252, 530 N.E. 2d 382, 401.

In the case at bar, the state's expert concluded that the tested levels of antimony, barium and lead were "higher than normal levels, but less in the amounts which can be associated with gunshot residues. Therefore * * * it could not be determined if the subject * * * had discharged a firearm or had his hands in close proximity to a discharging firearm." The witness then went on to explain the significance of finding higher than normal levels of antimony, barium and lead and concluded that an individual having higher than normal levels would obtain these levels *probably* from firing a weapon.

Although the state's expert initially opined that the levels of antimony, barium and lead relating to appellant's hand swabbings were less than those associated with gunshot residue, the witness also explained that appellant's results showed higher than normal

levels. Continued questioning of the witness clearly resulted in relevant and competent evidence that appellant's test results indicated that he *probably* fired a gun. The testimony of the witness clearly meets the requisite degree of certainty required of expert testimony set forth in *State* v. *Holt* (1969), 17 Ohio St. 2d 81, 46 O.O. 2d 408, 246 N.E. 2d 365. Further, the expert's testimony explaining what was meant by "higher than normal levels" was certainly admissible pursuant to Evid. R. 702.

Accordingly, we find no error, plain or otherwise, and appellant's second proposition of law is not well-taken.

### III

In his third and fourth propositions of law, appellant contends that the panel erred in admitting evidence which linked the blood found on appellant's clothing to the blood types of two of his victims and in admitting evidence associated with statistical grouping of blood types. Specifically, appellant objects to the testimony of the state's expert witness regarding a technique called electrophoresis used to analyze and type enzymes in blood and body fluids. Appellant claims that the electrophoresis technique is unreliable and, hence, inadmissible. Further, appellant contends that the use of statistical evidence to show the percentage of the black population having the type of blood which was found on appellant's clothing was prejudicial and created an impermissible inference of guilt given the failure of the state to put the statistical evidence in its proper perspective.

Appellant neither objected to the electrophoresis and statistical evidence at trial, nor presented these issues before the court of appeals. Appellant, therefore, waived the errors claimed.

*State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, paragraph one of the syllabus, vacated in part on other grounds, *Williams* v. *Ohio* (1978), 438 U.S. 911; *Broom, supra.* Accordingly, in the absence of plain error, we will not reverse appellant's convictions unless we determine that the outcome of the trial would clearly have been otherwise had the error not occurred. See discussion in Part II, *supra.*

The panel clearly had the discretion to admit the evidence under Evid. R. 702 to aid in the determination regarding the identity of the perpetrator. Therefore, we seriously question whether any error, plain or otherwise, occurred. In any event, we assume that the panel considered only relevant, material and competent evidence in arriving at its judgment. See, *e.g.*, *State* v. *White* (1968), 15 Ohio St. 2d 146, 151, 44 O.O. 2d 132, 136, 239 N.E. 2d 65, 70. Hence, appellant's third and fourth propositions are not persuasive.

### IV

Appellant, in his sixth proposition of law, contends that the panel prejudicially erred in admitting certain photographs of the victims at the crime scene, autopsy slides of the victims, photographs of the imprint on Datwan Talbott's forehead and photographs of three of the victims in life. Specifically, appellant argues that these photographs and slides are inflammatory and cumulative, thereby outweighing any probative value of the evidence. Therefore, appellant argues that the photographs and slides should have been excluded from evidence pursuant to Evid. R. 403.

We note that appellant did not object to the admissibility of every photograph or slide he has enumerated. Nonetheless, we have reviewed all the photographs and

slides which are the basis of appellant's contention and we have determined that there exists no error, plain or otherwise, in admitting the photographs and slides into evidence.

In *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768, paragraph seven of the syllabus, we stated:

"Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."

In the case at bar, the coroner's slides were illustrative of his testimony and other evidence presented and to be presented to the trier of fact. The slides and testimony related to the issue of prior calculation and design, as well as the nature and circumstances of the murders. Further, the pictures of Datwan's head showed the nature of the killings and established a link between the gun used in the killings and the gun which was recovered by the police. Certain other photographs merely depicted bullets and spent bullet casings which are clearly not "gruesome" photographs, as that term was defined in *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 281, 528 N.E. 2d 542, 550.

While it may be said that a few slides and photographs could have been excluded as cumulative or repetitive, we do not find any indication that the panel was inflamed by the presentation of these photographs and slides. We find that the probative value of the evidentiary materials outweighs any possible prejudice and, accordingly, we reject appellant's sixth proposition of law.

## V

Next, appellant, in his seventh proposition of law, argues that his convictions and death sentence must be reversed based upon alleged prosecutorial misconduct in the guilt and penalty phases of his trial.

### A
### Guilt Phase

Appellant argues that his convictions are improper because of the state's use of appellant's post-arrest, post-*Miranda* silence as evidence of his guilt. In *Doyle* v. *Ohio* (1976), 426 U.S. 610, the United States Supreme Court stated:

"We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. * * *" (Footnote omitted.) *Id.* at 619.

In the case *sub judice,* the testimony of two witnesses established that appellant never requested any information regarding what happened at 35 S. Ardmore or to the people residing therein. Appellant argues that the use of his post-*Miranda* silence as evidence of guilt, or "guilty knowledge," violates his constitutional rights. Appellee, at oral argument, acknowledged *Doyle* violations.

Appellant failed to object to one of these alleged *Doyle* violations but did object to the other, although not on the ground that his constitutional rights were violated. Additionally, appellant failed to present these issues before the court of appeals. However, given appellee's concession of error, we must find that the claimed error is harmless beyond a reasonable doubt if we are to sustain appellant's convictions. *Chapman* v. *California* (1967), 386 U.S. 18; *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323, paragraph three of the syllabus.

In *Williams,* we held that:

"Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *Id.* at paragraph six of the syllabus.

We find, beyond a reasonable doubt, that the evidence in the case at bar, absent the claimed *Doyle* violations, constitutes overwhelming proof of appellant's guilt. Dayron testified that he saw appellant shoot Glenna Green before Dayron himself was attacked by appellant. The evidence establishes that the rifle recovered by the police was, indeed, the rifle used in the murders. The butt-end of the rifle matched the imprint on Datwan Talbott's forehead. Other victims died as a result of blunt force trauma to the head. The atomic absorption test showed that appellant probably shot a gun. Bloodstains on appellant's pants matched the blood types of two of the victims. Appellant stated that he was firing a rifle at a range and subsequently changed his story. Appellant told Sam Thomas that the bullet hole went in small and came out big. A witness saw and heard a man who stated that he had killed his family, and evidence led to the conclusion that it was appellant who had made the statement. Furthermore, the panel is presumed to have considered only relevant, material and competent evidence in arriving at its judgment. *White, supra.* We can find no evidence that the panel considered appellant's post-*Miranda* silence in arriving at its verdicts.

Additionally, appellant contends that during closing argument in the guilt phase of his trial, his post-*Miranda* silence was used against him to negate his intoxication defense and that such use was in violation of *Doyle* and *Wainwright* v. *Greenfield* (1986),

474 U.S. 284. However, we find that appellant's post-*Miranda silence* was not used against him but, rather, appellant's post-*Miranda statements* were used by the prosecution in negating appellant's intoxication defense. In any event, the error presently claimed by the appellant was not objected to at trial, nor was the issue presented before the court of appeals. Accordingly, we conclude that the outcome of the trial would clearly not have been different absent appellant's statements. Therefore, appellant was not prejudiced by the errors, if any.

Finally, appellant cites to two instances which occurred during closing argument and urges this court to find that, based upon the occurrences, appellant was denied a fair trial. First, in order to account for the absence of a great deal of blood on appellant's clothing given the horrendous nature of these murders, appellee argued that appellant had probably changed his clothing, although no evidence was adduced at trial regarding this possibility. However, even though not part of the record, appellee was merely responding to appellant's speculative argument that appellant must be a "superman" to have avoided a great deal of blood which had splattered from the bodies of his victims. We do not find that appellee's argument denied appellant his rights to a fair trial, or to due process. There simply exists no evidence that the panel was influenced by appellee's remarks or that appellant was prejudiced thereby.

Second, appellant argues that the following statement by appellee constitutes reversible error:

"* * * We are going to hear constantly about the defendant's rights, constantly, but we are not going to hear about these three young kids, and they did not ask nor deserve to die out there. * * *"

Appellant contends that the above-quoted statement amounts to an improper claim that a capital defendant has more rights than he should have. We find that it is highly unlikely that the panel understood appellee's remarks as such.

Accordingly, appellant's seventh proposition of law, relating to the guilt phase of his capital trial, is not persuasive.

## B
## Penalty Phase

Appellant urges reversal of the death penalty sentence based upon what he views as appellee's improper use of post-*Miranda* silence in the penalty phase of the trial to discredit appellant's intoxication claim. We find no reversible error in this regard.

Appellant also argues that appellee misstated evidence regarding appellant's claimed mental disease or defect. In our review of the opinions of the trial panel and the court of appeals, we find that both opinions found in appellant's favor regarding the mitigating factor of mental disease or defect as set forth in R.C. 2929.04(B)(3). However, such a finding does not preclude the imposition of the sentence of death. R.C. 2929.04(C). Further, there is a distinction between lacking the capacity to conform and lacking the ability to understand.

Appellant also attacks the imposition of the death penalty sentence based upon appellee's references to photographs which were not admitted into evidence in the penalty phase of appellant's trial. The photographic evidence in question was admitted at the guilt phase of appellant's trial. We fail to see how appellant was prejudiced by the fact that appellee invited the panel to look at photographs which had been admitted in the guilt phase and which the panel had already seen.

In any event, appellant failed to object to appellee's reference to the photographs and failed to raise the issue before the court of appeals. As such, we are convinced that the outcome of the trial would not have been different, absent the claimed error.

Next, appellant seeks reversal of his death penalty sentence since, according to appellant, appellee argued the nature and circumstances of the offenses as a non-statutory aggravating circumstance. We do not agree. Upon reviewing the record, there is no evidence that appellee's argument went toward creating a non-statutory aggravating circumstance. Further, in *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, paragraph one of the syllabus, we held that:

"Under R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors."

Accordingly, we reject appellant's seventh proposition of law.

## VI

Appellant, in his eighth proposition of law, alleges that the evidence at his trial was insufficient to show that the murders were committed with prior calculation and design because of his voluntary intoxication. We reject appellant's contentions. In *State* v. *Cotton* (1978), 56 Ohio St. 2d 8, 10 O.O. 3d 4, 381 N.E. 2d 190, paragraph three of the syllabus, we held that:

"Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated

decision to kill, a finding by the trier of fact of prior calculation and design is justified."

In the case at bar, appellant, after arguing with Glenna Green, left the house for a period of about ten minutes. The evidence was sufficient to show that appellant then returned with a rifle, stood in front of Glenna Green and shot her to death, shot and beat Dayron Talbott, reloaded the weapon, and then killed or attempted to kill all the people in the household. Appellant also had left the house previously for a period of approximately one-half hour. We conclude, as did the trier of fact, that there existed sufficient time and opportunity for the planning of appellant's acts. Additionally, we find evidence that the circumstances of appellant's killing or attempting to kill all the witnesses in the household showed a scheme to implement the calculated decision to kill which, according to *Cotton,* justified the finding of prior calculation and design.

Evidence produced by appellant of his intoxication was through an expert witness who estimated that appellant, around the time the murders were committed, had a blood-alcohol level of between .30 and .36, meaning that appellant would have been in a stupor. The expert's estimation accounted for the consumption of some alcoholic beverages after the time of the murders. However, the evidence of appellant's intoxication conflicted with evidence brought out by · appellee. Bruce Shackleford, who observed appellant around the time of the murders, testified on cross-examination that appellant did not appear to be drunk or have difficulty walking or talking. Thomas testified that he and appellant drank intoxicating beverages *after* the murders. Finally, the testimony of Dayron

Talbott regarding appellant's act of reloading the rifle after Glenna Green's murder shows some degree of functional ability on appellant's part.

The question of whether or not appellant acted with prior calculation and design is an issue of fact. Based upon the facts in the case *sub judice,* we find evidence sufficient to warrant the conclusions reached by the panel that weighed the evidence and determined the credibility of the witnesses. Apparently, the panel concluded that appellant's intoxication (if he was intoxicated at all) did not negate the finding of prior calculation and design.

## VII

Appellant, in his ninth proposition of law, argues that the guilty verdicts were against the manifest weight of the evidence. After a thorough review of the entire record before us, we are convinced that the evidence establishes appellant's guilt beyond a reasonable doubt. Therefore, we reject appellant's ninth proposition of law.

## VIII

In his tenth proposition of law, appellant alleges that his death sentence is unreliable, inappropriate and constitutionally infirm because the panel refused to consider relevant mitigating factors and considered non-statutory aggravating circumstances.

Appellant, in the penalty phase of his trial, introduced evidence that because of his chronic alcoholism, he lacked a substantial capacity to conform his conduct to the requirements of the law; that the offense was a product of strong provocation; that appellant was raised in an unstable and insecure environment; that his mother was an alcoholic; and that appellant had conducted himself well in jail between his arrest and trial, including summoning officers at the jail on one

occasion when an individual attempted to commit suicide. The panel recognized only the mitigating factor that appellant lacked a substantial capacity to conform his conduct to the requirements of the law. The panel rejected arguments that appellant was under duress or provoked by the failure of Glenna Green to comply with appellant's requests for money. The panel concluded that appellant did not meet his burden of proving provocation or duress by a preponderance of the evidence. Additionally, the panel concluded that appellant had not established "* * * the existence of any other mitigating factor relevant to the issue of whether or not the offender should be sentenced to death."

Appellant argues that the panel erred in refusing to consider all mitigating factors. From a reading of the panel's opinion, we may only assume that the mitigating factors were considered, but rejected.

Essentially, appellant asks this court to require a three-judge panel to accept all mitigating factors offered or proposed by appellant. We have addressed and rejected this same proposition on several occasions. See, *e.g., DePew, supra; State v. Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383; *Stumpf, supra.* No compelling reason is advanced which would cause us to change our previous position on this issue.

Appellant also contends that the panel considered non-statutory aggravating circumstances in the sentencing determination. In support of his contention, appellant refers to portions of the sentencing opinion.[2] According to appellant, since only one aggravating circumstance was found to exist, the panel's references to ag-

---

[2] "* * * The panel notes that the aggravating *circumstance* for which Defendant was found guilty is that the offenses were part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons.

"Further, the panel finds that the Defendant committed the purposeful killings of Glenna Green, Lana Green, Voilana Green [*sic*], Daytrin Talbott, and Datwan Talbott, with prior calculation and design. A review of the injuries inflicted by this Defendant and sustained by these victims shows an intentional and calculated scheme *to cause the deaths of all eight victims.*

"The wounds and blunt force trauma sustained by all of the victims were shocking. The Defendant not only shot several of the victims, he brutally and intentionally followed a course of conduct whereby he actually crushed the skulls of several of his victims, some of whom were children under seven years of age.

"In addition, the wounds received by the three surviving victims demonstrate that the Defendant had the specific purpose to take their lives as well.

"The Defendant also introduced a copy of his criminal history. In addition to reflecting a number of intoxication-related violations, it also indicates the Defendant's prior felony convictions, incarceration, and his propensity for violence.

"*In addition* to the above, this panel considered the nature and circumstances of the offenses, the family and social history of the Defendant, as well as his characteristics and background.

"Upon full, careful and complete scrutiny of all the mitigating factors set forth in the statute or called to the Court's attention by defense counsel in any manner and after considering fully the aggravating circumstanc*es* which exist and have been proven beyond a reasonable doubt, this panel unanimously concludes that the aggravating circumstanc*es* do outweigh all the mitigating factors advanced by the defendant beyond a reasonable doubt as required by O.R.C. Section 2929.03(D)(3) * * *." (Emphasis added.)

gravating circumstances shows that the panel converted the nature and circumstances of the crime into non-statutory aggravating circumstances. We do not agree. The panel specifically found only one aggravating circumstance to exist. In its sentencing opinion, it was wholly proper for the panel to rely upon and cite the nature and circumstances of the offense as reasons for supporting the finding that the aggravating circumstance outweighed the mitigating factors. *Stumpf, supra.* We presume that the panel knew the difference between an aggravating circumstance on the one hand and the nature and circumstances of the crime on the other hand. Simply because the panel referred to aggravating circumstances does not mean that the nature and circumstances of the crime became a non-statutory aggravating circumstance.

## IX

In his eleventh proposition of law, appellant merely repeats his first, second, third, seventh, eighth and tenth propositions of law and labels them cumulative error requiring reversal of the death sentence. We decline to accept appellant's invitation to revisit these propositions of law previously addressed.

We have stated that errors, if any, in appellant's trial were not outcome determinative and, hence, appellant was not prejudiced thereby. For the most part, we have held that appellant's propositions fail to establish errors and, therefore, we fail to see how the absence of error can constitute cumulative error.

## X

Appellant, in his twelfth proposition of law, argues that he was denied effective assistance of counsel at trial and on appeal. Therefore, appellant urges reversal of his convictions and sentence.

In *Strickland* v. *Washington* (1984), 466 U.S. 668, 687, the United States Supreme Court stated:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First, the defendant must show that counsel's performance was deficient.* This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Second, the defendant must show that the deficient performance prejudiced the defense.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." (Emphasis added.)

As to the required showing of "prejudice," the court went on to state that "* * * [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Assuming *arguendo* that appellant has proved a deficiency in counsel's performance, appellant has failed to establish that he was prejudiced by the deficiency. We have reviewed each and every alleged error. Pursuant to our review, we have found no prejudicial error which in any way *undermines* the integrity of appellant's convictions and sentence.

## XI

Appellant, in his thirteenth proposition of law, raises arguments concerning the constitutionality of Ohio's capital punishment scheme. These arguments have been raised and rejected by this court in previous cases. See, *e.g., Steffen, supra; State* v. *Buell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795; and *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264.

As appellant presents us with no compelling reason why we should not adhere to our prior position on these issues, we reject appellant's thirteenth proposition of law.

## XII

Finally, we must independently review the death sentence for appropriateness and proportionality. The aggravating specification, pursuant to R.C. 2929.01(A)(5), was that the offenses were part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons.

Appellant shot Glenna Green who died as a result of a gunshot wound to the head. Appellant then shot Dayron Talbott in the face, began laughing, and hit Dayron in the face with the end of a rifle, thereby inflicting serious wounds. The other six victims were either killed or seriously wounded due to injuries inflicted to the head. We find that the aggravating circumstance is proved beyond a reasonable doubt.

Appellant introduced evidence on the mitigating factor that he lacked a substantial capacity to conform his conduct to the requirements of the law because of a mental disease or defect. This R.C. 2929.04(B)(3) factor was considered by us and given some weight. Appellant also offered evidence that the crimes were committed because of strong provocation due to appellant's alcoholism and the refusal of Glenna Green to give appellant money upon request. We find that appellant did not establish the existence of this factor by a preponderance of the evidence.

Also, appellant presented evidence that he was raised in an unstable and insecure environment and that his mother was an alcoholic. We find that these factors are entitled to some, but very little, weight in mitigation. Appellant also presented evidence that he had conducted himself well in jail between the time of his arrest and his trial. Additionally, while appellant was in jail, he aided in the prevention of a suicide. We conclude that these factors are entitled to some, but very little, weight in mitigation.

Finally, our review of appellant's criminal history reveals a number of intoxication-related offenses. However, appellant's criminal history also reveals prior felony convictions and shows his propensity for violence.

Weighing the various mitigating factors against the aggravating circumstance, we conclude that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

As our final task, we have undertaken a comparison of the sentence in this case to those cases in which we have previously imposed the death penalty. We find that appellant's death sentence is neither excessive nor disproportionate. See, *e.g., State* v. *Hooks* (1988), 39 Ohio St. 3d 67, 529 N.E. 2d 429.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.