OPINION
Defendant-appellant, Gary Martin, appeals his conviction in the Brown County Court of Common Pleas for rape. We affirm the decision of the trial court.
On February 15, 1998, Emily Cake made arrangements to spend the night at the home of her cousins, Christina and Rebecca. Emily was fifteen years old; her cousins were between fifteen and sixteen years old. At some point during the evening, the three girls decided to pool their money to buy alcohol.
Appellant, stepfather of Christina and Rebecca, took the three girls to a liquor store and purchased a bottle of tequila for them. At home, appellant and the girls gathered around a coffee table and began drinking shots of tequila. Although it is not clear as to how much tequila each person consumed, it is undisputed that Emily did not stop drinking until the entire bottle of alcohol had been consumed. Emily recalled that she drank ten shots of tequila and two cans of beer.
Emily began feeling "numb" from the alcohol consumption. She went outside, lay on the front porch and vomited into the grass. Emily got up from the front porch and walked to the rear of the house where she again lay down and vomited. Appellant helped Emily come back inside the house. Emily remembered appellant picking her up and laying her down on the couch in the living room.
Emily felt appellant groping between her legs. Appellant removed Emily's jeans and continued to fondle her. He pulled down her underwear and Emily felt appellant penetrate her vagina with his fingers. Appellant then inserted his penis into her vagina. Emily knew what was happening to her, but she was so intoxicated that she could not stop appellant because her "body would not function." Appellant redressed Emily and then kissed her on her lips.
The next day Emily told another cousin, Angie Day, what had happened to her that night. Day reported the incident to the police. Emily, upon the instruction of the police, went to the hospital for a rape examination.
Appellant was indicted for rape, gross sexual imposition and providing alcohol to minors. Appellant contended that the sexual activity never took place. He was tried before a jury.
At trial, John Edward Byrnes, M.D., emergency room physician for Clermont Mercy Hospital, testified about his examination of Emily at the hospital. Dr. Byrnes observed that Emily had an abrasion near the posterior part of her vagina, where the inner and outer labia meet. He further perceived that Emily was experiencing vaginismus and that there was a small amount of vaginal discharge. Dr. Byrnes' opined that his observations were consistent with sexual penetration.
Margaret A. Saupe, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, examined the clothing Emily was wearing. She testified that she discovered the presence of semen and sperm on Emily's jeans and underwear. Saupe forwarded samples of the clothing to Cellmark Diagnostics ("Cellmark") for DNA testing.
Lisa Grossweiler, Senior DNA Analyst for Cellmark, testified that the DNA from the sperm found on Emily's underwear matched the DNA in a blood sample provided by appellant. Grossweiler further stated that a Cellmark computer program calculated that the chances of another person having an exact DNA match would be as follows: one in sixty-nine billion for Caucasians, one in one hundred ninety billion for western Hispanics, and one in five trillion for African-Americans.
At the conclusion of the state's evidence, appellant moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled appellant's motion. A jury found appellant guilty of rape, gross sexual imposition and furnishing alcohol to a minor. From his convictions, appellant appeals and raises three assignments of error. For clarity, we will address appellant's assignments of error out of order.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DESIGNAING VOLUNTARY INTOXICATION, IN AND OF ITSELF, TO BE A PHYSICAL CONDITION FOR THE PURPOSES OF A VIOLATION OF RAPE, REVISED CODE SECTION 2907.02(A)(1)(c).
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ADMITTING EXPERT TESTIMONY REGARDING RESULTS OF DNA TESTING THAT DID NOT CONFORM WITH THE RULES OF EVIDENCE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING APPELLANT'S RULE 29 MOTIONS FOR ACQUITTAL AS TO THE RAPE OFFENSE IN VIOLATION OF APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.
In his second assignment of error, appellant maintains that the trial court erred by admitting the DNA test results into evidence. Specifically, appellant challenges Grossweiler's testimony at trial to the extent that it related to the DNA test results and statistical probabilities.
Evid.R. 702 governs the admissibility of expert testimony and provides:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
It is well-settled that the admissibility of expert testimony under Evid.R. 702 is within the sound discretion of the trial court. See, e.g., Columbus v. Taylor (1988), 39 Ohio St.3d 162,164. The trial court's exercise of discretion extends to both the qualifications of the testifying expert and the subject matter of the expert's testimony. See id.; State v.Wages (1993), 87 Ohio App.3d 780, 786. An appellate court must not disturb a trial court's decision to admit expert testimony under Evid.R. 702 absent an abuse of discretion. See, e.g.,State v. Mack (1995), 73 Ohio St.3d 502, 511. The term "abuse of discretion" requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466,470; State v. Moreland (1990), 50 Ohio St.3d 58, 61.
Appellant maintains that the trial court erred by admitting into evidence testimony regarding the DNA test results to the extent that the testimony indicated statistical probabilities that appellant's DNA would match another person's DNA. Appellant argues that this evidence was inadmissible because the state did not prove that the tests to create the statistics were accurate or that there were sufficient quality controls to ensure accurate test results.
DNA evidence, in general, is admissible if it is relevant and will assist the trier of fact in determining a fact at issue.State v. Pierce (1992), 64 Ohio St.3d 490, paragraph one of the syllabus. DNA evidence specifically expressed in terms of population frequency is also admissible if it is relevant. Seeid. at 500-01; State v. Breeze (Nov. 24, 1992), Franklin App. No. 92AP-258, unreported. Questions regarding the reliability of DNA evidence in a given case, including alleged defects or limitations of DNA population frequency statistics, go to weight of the evidence rather than its admissibility. See Pierce, 64 Ohio St.3d at paragraph two of the syllabus and 500-01.
Therefore, the trial court did not abuse its discretion in admitting Cellmark's calculations as to the frequency statistics. Appellant's trial counsel cross-examined Grossweiler at length about the potential flaws and lack of quality assurances in Cellmark's statistical calculations. It was for the jury to determine what weight, if any, to give the calculations.
Appellant also maintains that Grossweiler was not qualified to give expert testimony about DNA statistical probabilities. A witness who is qualified to testify as an expert about DNA tests need not be qualified as an expert in statistics in order to provide a conclusion regarding the statistical frequency of a genetic marker in the human population. See State v. Prather
(July 10, 1995), Brown App. No. CA94-08-010, unreported; State v.Wages (1993), 87 Ohio App.3d 780, 786.
Grossweiler has been employed by Cellmark since 1991 and presently holds the position of Senior DNA Analyst. During the course of her employment, Grossweiler has performed DNA testing on between three hundred and four hundred cases. She holds a bachelor's degree in biochemistry and has completed coursework towards a master's degree in forensic science. The record demonstrates that Grossweiler was sufficiently qualified to testify as an expert concerning the results of the DNA analyses performed in this case. Grossweiler's expert opinion regarding the statistical frequency of appellant's DNA in the human population was simply drawn from Cellmark's computer program and consequently did not require her to be qualified as an expert in statistics. Therefore, the trial court did not abuse its discretion by permitting Grossweiler to testify about the statistical frequency of appellant's DNA test results.
Accordingly, appellant's second assignment of error is overruled.
In his first and third assignments of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal because there was insufficient evidence to support his conviction for rape. Specifically, appellant maintains that the state failed to prove that Emily's ability to resist sexual conduct was substantially impaired because of a mental or physical condition.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
Appellant was convicted of violating R.C. 2907.02(A)(1)(c), which states:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.
Sexual conduct includes vaginal intercourse between a male and female and the insertion of any part of the body into the vaginal cavity of another, without the privilege to do so. R.C. 2907.01(A).
The crux of appellant's argument is that the state failed to prove that Emily's ability to resist or consent to the sexual conduct was substantially impaired because of a physical or mental condition. Appellant argues that the General Assembly did not intend to include a victim's voluntary intoxication within the ambit of the term "physical condition." In support of his argument, appellant notes that the 1974 Committee Comment states that R.C. 2907.02
 does not include the situation where a person plies his intended partner with drink or drugs in the hope that lowered inhibitions might lead to a liaison, since when the alcohol or drugs are voluntarily taken in the absence of force or deception, the consent of the `victim' can fairly be inferred.
Appellant further contends that this court held in State v.Duffey (Apr. 1, 1996), Fayette App. No. CA95-03-006, unreported, that the term "physical condition" includes voluntary intoxication only when that intoxication results in unconsciousness.
R.C. Chapter 2907 does not define the term "mental or physical condition," which leaves this court to interpret whether intoxication falls within the meaning of the term. A court's primary duty in interpreting a statute is to give effect to the intent of the legislature. See, e.g., State v. S.R. (1992),63 Ohio St.3d 590, 594-595. Statutes should be interpreted in a way that avoids unreasonable or absurd results. State ex rel.Dispatch Printing Co. v. Wells (1985), 18 Ohio St.3d 382, 384;Fifth Third Union Trust Co. v. Peck (1954), 161 Ohio St. 169,174. It is presumed that the General Assembly intended a just and reasonable result in enacting a particular statute. R.C. 1.47. In determining legislative intent, the court should look at the language of statute and ascertain the apparent purpose to be accomplished, and then adopt a construction that gives effect to that purpose. S.R., 63 Ohio St.3d at 594-95. It is the duty of the court to give effect to the words used in a statute, not to insert new words. Id. Where a particular word employed in a statute is not defined, it will be accorded its common, ordinary, plain, everyday meaning. Id.; Sharp v. Union Carbide Corp.
(1988), 38 Ohio St.3d 69, 70.
A "condition" is a "state with reference to mental or moral nature, temperament, character, or disposition" and also refers to "the physical status of the body as a whole." Webster's Third New International Dictionary (1993) 473. When a person is intoxicated, that individual "does not have the normal use of his physical or mental faculties." Black's Law Dictionary (6 Ed.Rev. 1990) 822. Intoxication is thus both a mental and a physical condition. Therefore, under the plain meaning of the words used in R.C. 2907.02(A)(1)(c), a person whose ability to resist or consent is substantially impaired because of intoxication is a person whose ability to consent or resist is substantially impaired by reason a mental or physical condition. This common sense interpretation of the statute gives effect to the intended meaning of R.C. 2907.02(A)(1)(c).
We agree with appellant that the Committee Comment to R.C.2907.02 evinces a legislative intent to exclude the situation where a person "plies his intended partner with drinks or drugs in the hope that lowered inhibitions might lead to a liaison." However, the statute plainly intends to hold a person culpable for rape when that individual engages in sexual conduct with someone the individual knows or has reason to know is substantially impaired because of a mental or physical condition. While R.C.2907.02 was not intended to criminalize sexual conduct as the result of an alcohol-induced state of "lowered inhibitions," we cannot say that it was not intended to criminalize sexual conduct where the victim is "substantially impaired" because of intoxication. Interpreting the statute in such a way would produce a profoundly absurd result.
Substantial impairment as a result of intoxication can include, but does not require, unconsciousness. Contrary to appellant's assertion, this court did not hold in State v. Duffey that a victim is substantially impaired by reason of voluntary intoxication only when that intoxication results in unconsciousness. In fact, this court reasoned in Duffey that it would be absurd to exclude from the analogous language of former R.C. 2907.12[1] the situation where a victim "intoxicated herself to the point of unconsciousness or impaired ability to resist." State v. Duffey (Apr. 1, 1996), Fayette App. No. CA95-03-006, unreported, at 20 (emphasis added). Therefore, we hold that voluntary intoxication is included in the term "mental or physical condition" as used in R.C. 2907.02(A)(1)(c).[2] A person who engages in the sexual conduct proscribed by R.C. 2902.02(A)(1) and (c) when the victim's ability to resist or consent is substantially impaired by reason of voluntary intoxication is culpable for rape. We do not hold that all persons who engage in sexual conduct with a voluntarily intoxicated person are culpable under R.C. 2907.02(A)(1)(c). A person's conduct becomes criminal under this section only when engaging in sexual conduct with an intoxicated victim when the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired
because of voluntary intoxication.
Turning to the facts of this case, Emily stated that she felt "numb" because of intoxication. She had consumed so much alcohol that she was lying on the ground vomiting. She remembered appellant picking her up and placing her on the couch. When appellant began engaging in sexual conduct, Emily "was aware of what was going on" but she was in a state where her body "would not function" and she "couldn't stop it." Emily stated that appellant engaged in sexual intercourse with her and also inserted his finger into her vagina. The incident was reported to the police as a rape and Emily went to the hospital for a rape examination.
Dr. Byrnes testified that his examination of Emily revealed an abrasion in her vaginal area, vaginismus and vaginal discharge. Dr. Byrnes opined that his observations were consistent with sexual penetration.
Margaret Saupe testified that her analysis of Emily's jeans and underpants revealed the presence of semen and sperm. The DNA tests completed by Lisa Grossweiler revealed that the DNA from the sperm found on Emily's underwear matched the DNA in appellant's blood sample.
From this ample evidence, a rational trier of fact could find the essential elements of rape under R.C. 2907.02(A)(1)(c) proven beyond a reasonable doubt. Appellant's first and third assignments of error are overruled.
 _________________________ POWELL, P.J.
YOUNG and VALEN, JJ., concur.
[1] R.C. 2907.12 defined felonious sexual penetration and was repealed September 3, 1996. R.C. 2907.01(A)(1)(c) employs the same language formerly used in R.C. 2907.12(A)(1)(c).
[2] Appellant also argues that the trial court erred by instructing the jury that "[s]ubstantial impairment due to voluntary intoxication can be included in the phrase `physical condition.'" As we have determined that this is a correct statement of the law, the trial court did not give the jury an erroneous instruction.