DECISION.
From June 1, 1999, to December 1, 2000, defendant-appellant Gary Bemmes abused his position of trust as general manager for his employer and stole money from the company. The amount stolen was significant enough that the company went through a period of financial distress and was temporarily unable to pay its other employees.
Bemmes pleaded guilty to the theft.[1] During a short hearing in which the trial court accepted Bemmes's plea, the state said that there had been an agreement that the amount stolen was $95,000. Representatives for the employer who were present for the plea hearing told the court that there may have been more money involved, but that they were comfortable pursuing additional restitution in a civil action.
Three separate times during the plea hearing the court specifically stated that the amount Bemmes admitted to stealing was $95,000, and that it would probably order him to pay that amount in restitution to his employer. Bemmes acknowledged the court's statements concerning the amount of the theft and, without objection, pleaded guilty to a fourth-degree felony.[2] The court set Bemmes's sentencing hearing for the following month so that a presentence investigation, a clinical evaluation, and victim-impact statements could be completed and reviewed.
At the sentencing hearing, the trial court restated that there had been an agreement that the amount stolen was $95,000, and Bemmes did not object. He simply responded that he was prepared to receive his sentence. The court provided Bemmes's attorney with an opportunity to speak to the court about factors that might mitigate the sentence the court would impose. The attorney explained that Bemmes was presently employed in a good job with a competitor of his prior employer, and that incarceration might jeopardize that position and thus affect the amount Bemmes could afford to pay in restitution.
But Bemmes's attorney also suggested that Bemmes's employer had known at the time about some acts of misappropriation of company funds, and that the owner of the company had himself benefited from some of Bemmes's activities. Bemmes then told the court that the true amount he had stolen for his own use was actually somewhere between $30,000 and $40,000. Bemmes's attorney explained that Bemmes's prior admission to stealing $95,000 had only been "for purposes of this [criminal] action," that the actual amount would be sorted out in the civil action, and that Bemmes "wouldn't be held to that [$95,000] amount."
The trial court explained that there were indeed ramifications associated with his prior agreement in pleading to the theft of a specific amount of money. And twice the court offered Bemmes the opportunity to withdraw his guilty plea if it had been made under the erroneous assumption that the specific amount of the theft was unimportant. But Bemmes refused both of the court's offers to withdraw his guilty plea. The court sentenced Bemmes to nine months of incarceration and ordered that he pay $95,000 in restitution to his former employer.
Bemmes now appeals only the trial court's order that he pay restitution to his former employer. He raises two assignments of error. First, Bemmes argues that the court erred by imposing restitution without considering his ability to pay. Because the record reflects that the court met its statutory obligation to consider Bemmes's ability to pay a financial sanction, we overrule his first assignment of error. Second, Bemmes contends that during the time that he admitted to stealing from his employer, the law changed. Before a certain point, the court had no statutory authority to order restitution, but after the change in the law, it admittedly did. According to Bemmes, the state's failure to prove how much he had stolen while each alternative sentencing statute was in effect should invalidate the entire restitution order. We overrule Bemmes's second assignment of error because the record does not demonstrate plain error.
A trial court is authorized by statute to sentence a felony offender to pay financial sanctions, including restitution to the victim.[3] Before imposing such a sanction, the court also has a corresponding mandatory duty to "consider the offender's present and future ability to pay the amount of the sanction."[4] But there are no express factors concerning the offender's ability to pay that the court is required to find on the record.[5] Nor is the court required to hold a hearing to determine the offender's ability to pay, though it may choose to do so.[6]
Thus, when a trial court has imposed a financial sanction without even a cursory inquiry into the offender's present and future means to pay the amount imposed, the failure to make the requisite inquiry is an abuse of discretion.[7] But where the trial court has indicated that it has reviewed a presentence-investigation report that contains information regarding the offender's ability to pay restitution, and oral statements concerning the offender's work history are part of the record from the sentencing hearing, the court has complied with its statutory duty.[8]
In this case, the trial court heard from Bemmes's attorney that Bemmes had found "a good job" with a competitor of his former company. Representatives of this new employer told the court that they considered him to be a "great asset." And the court specifically mentioned at Bemmes's sentencing hearing that it was relying on his clinical evaluation and presentence report. Under these circumstances, we hold that the court fulfilled its statutory duty to inquire into Bemmes's present and future ability to pay restitution.
This type of brief inquiry is all that the law requires because a court may not revoke an offender's probation and send him to prison for failure to make restitution where the failure is solely attributable to an inability to pay.[9] Thus, if Bemmes were again brought before the trial court for failure to pay the restitution (and we are not certain how this may be accomplished, given that no period of community control was imposed), the court would then have to determine whether his failure to pay was willful that he had the ability to pay, but refused to do so. We overrule Bemmes's first assignment of error.
Bemmes's second assignment of error is based on a statutory revision that became effective while he was stealing from his employer. Prior to March 23, 2000, an inadvertently linked series of statutory definitions created an unintentional anomaly in sentencing. A trial court could order restitution only in cases where the offender's conduct posed a substantial threat of personal injury or death.[10] The anomaly was corrected by the legislature, and after March 23, 2000, a trial court could order a felony offender to pay restitution for "any economic detriment suffered by a victim."[11]
Bemmes stole from his former employer by writing company checks to himself. Admittedly, this conduct did not pose a substantial threat of personal injury or death. And, according to the state, the thefts occurred between June 1, 1999, and December 1, 2000. Thus the law changed at approximately the midpoint of Bemmes's thefts. For the first nine months that he stole from his employer, the trial court would not have been authorized to order him to pay restitution. But, during the second nine months, restitution would have been allowed. Because the record does not demonstrate what amount of money was stolen during which time frame, Bemmes argues that the trial court erred in ordering him to pay any restitution.
Because Bemmes did not object in the trial court to the order that he pay restitution as part of his sentence, the error has been waived unless it rises to the level of plain error.[12] We reverse a sentence for plain error only under exceptional circumstances to prevent a manifest miscarriage of justice.[13] There is no plain error unless we may ascertain from the record that Bemmes's sentence would clearly have been different, but for the error.[14] From the record in this case, we cannot discern plain error.
It is true that under the facts to which Bemmes pleaded guilty to theft, his criminal conduct occurred over an eighteen-month period. The court would only have been authorized to sentence Bemmes to reimburse his victim for criminal conduct occurring in the last nine months. But because it is not clear from the record when the $95,000 was stolen, we can find no plain error. Nor do we consider it a manifest miscarriage of justice that Bemmes should be required to pay a sum that the trial court repeatedly warned him it intended to impose. We thus overrule Bemmes's final assignment of error.
Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt and Sundermann, JJ., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Decision.
[1] See R.C. 2913.02(A)(1).
[2] See R.C. 2913.02(B)(2).
[3] See R.C. 2929.18(A).
[4] See R.C. 2929.19(B)(6).
[5] See State v. Adkins (2001), 144 Ohio App.3d 633, 647, 761 N.E.2d 94,105.
[6] See R.C. 2929.18(E); State v. Kelly (2001), 145 Ohio App.3d 277,282, 762 N.E.2d 479, 482, citing State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001, unreported; State v. Martin (2000),140 Ohio App.3d 326, 338, 747 N.E.2d 318, 327.
[7] See State v. Adkins (2001), 144 Ohio App.3d 633, 647-648,761 N.E.2d 94, 105; State v. O'Linn (Mar. 16, 2000), Cuyahoga App. No. 75815, unreported; State v. Brewer (Jan. 28, 1998), Auglaize App. No. 2-97-20, unreported, citing State v. Horton (1993), 85 Ohio App.3d 268,619 N.E.2d 527.
[8] See State v. Martin (2000), 140 Ohio App.3d 326, 338, 747 N.E.2d 318,327-328.
[9] See State v. Hudson (Nov. 14, 2000), Franklin App. No. 00AP-236, unreported, citing Tate v. Short (1971), 401 U.S. 395, 91 S.Ct. 668, InRe Jackson (1971), 26 Ohio St.2d 51, 268 N.E.2d 812, and State v. Bostic
(1984), 16 Ohio App.3d 438, 476 N.E.2d 722; State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001, unreported; State v. Deal (Sept. 27, 1990), Cuyahoga App. No. 57458, unreported.
[10] See State v. Walsh (1999), 135 Ohio App.3d 76, 80-81,732 N.E.2d 1055, 1059.
[11] See R.C. 2929.01(M); State v. Swart (Oct. 23, 2000), Clinton App. No. CA2000-02-006, unreported.
[12] See State v. Campbell (2000), 90 Ohio St.3d 320, 324,738 N.E.2d 1178, 1188; State v. Rangel (2000), 140 Ohio App.3d 291,296-297, 747 N.E.2d 291, 295-296; State v. Lake (1996),111 Ohio App.3d 127, 133, 675 N.E.2d 1258, 1262, citing State v. Gibson
(1993), 89 Ohio App.3d 188, 190, 623 N.E.2d 1266, 1267-1268.
[13] See State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
[14] See State v. Moreland (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894,899.