OPINION
{¶ 1} Defendant, John Nelson, appeals from his conviction and sentence for telephone harassment and aggravated menacing.
 {¶ 2} Doreen Beedy, Defendant's girlfriend, worked the third shift at Sterling House, an assisted care living facility in Urbana. On March 9, 2006, at around 2:30 a.m., *Page 2 
Beedy called Defendant from work to learn whether Defendant had returned from an Indiana gambling casino, where Defendant had gone after receiving his income tax refund. During the conversation Beedy and Defendant began arguing and Beedy told Defendant that their relationship was over. Beedy then hung up.
 {¶ 3} A short time later Defendant called Beedy at her place of employment. The parties continued arguing, and at some point during that conversation Defendant threatened to come to Sterling House, break a window or door, and beat up Ms. Beedy.
 {¶ 4} Beedy became visibly upset while on the phone and started to cry. One of Beedy's co-workers called Urbana police. Officers Todd Pratt and Jade Cooper were dispatched to Sterling House. Beedy was visibly upset, perspiring and shaking when officers arrived. Beedy told the officers that Defendant had called and threatened to come there and "beat the shit out of her."
 {¶ 5} Using the "star 69" feature on the phone on which Beedy spoke with Defendant, police redialed the number from which the threatening phone call originated. Debra Hoffman, Doreen Beedy's mother, answered the phone. She told police her address was 452 Logan Street in Urbana, that Defendant stayed at her residence, and that he had recently made a phone *Page 3 
call from her home.
 {¶ 6} Police arrived at the Logan Street residence at around 4:00 a.m. They observed Defendant riding up to the home on a bicycle. When questioned by police, Defendant initially denied making any phone calls to anyone. After police informed Defendant that they were going to interview the residents of 452 Logan Street, Defendant admitted to making a phone call one hour earlier. Defendant was intoxicated and kept trying to leave.
 {¶ 7} Police patted Defendant down and placed him in the rear of a police cruiser while they completed their investigation. After interviewing Debra Hoffman and Kelly Serna, the other residents at 452 Logan Street, police informed Defendant that they knew he had called Doreen Beedy. Officer Pratt warned Defendant not to call Beedy again, and Defendant acknowledged that instruction by shaking his head "yes."
 {¶ 8} Defendant was subsequently charged with telephone harassment, a fifth degree felony because of Defendant's previous conviction for that same offense, R.C. 2917.21(A)(3), (C)(2), and aggravated menacing, a first degree misdemeanor, R.C. 2903.21(A). Following a jury trial Defendant was found guilty as charged on both offenses. The trial court sentenced Defendant to three years of community control sanctions, and *Page 4 
imposed fines totaling three hundred dollars.
 {¶ 9} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 10} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE ALLEGED VICTIM STATED THAT SHE NEVER BELIEVED THAT APPELLANT WOULD CAUSE HER SERIOUS PHYSICAL HARM."
 {¶ 11} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 12} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 13} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of *Page 5 
facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. InState v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 14} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 15} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 16} In order to prove telephone harassment in violation of R.C.2917.21(A)(3), the State was required to prove that Defendant knowingly made a telephone call to Beedy that violates R.C. 2903.21. To prove a violation of R.C. 2903.21(A), the aggravated menacing statute, the State was required to prove that Defendant knowingly caused Beedy to believe that he would cause her serious physical harm. In *Page 6 
other words, the State was required to show that the victim in fact believed that the offender would cause serious physical harm to her person. State v. Manley (Sept. 17, 2004), Montgomery App. No. 20229,2004-Ohio-4930.
 {¶ 17} The evidence is uncontested that Defendant called Doreen Beedy and threatened her by telling Beedy that he was going to come to her workplace, Sterling House, break a door or window, and "beat the shit out of her." The issue is whether, as a result, Beedy in fact believed that Defendant would cause her serious physical harm.
 {¶ 18} When Beedy was asked at trial if she believed that Defendant would cause her serious physical harm, Beedy responded: "No, not at that point. I didn't think John was going to hurt me, no" T. 182). Beedy also stated several times at trial that she was more afraid of losing her job if Defendant came to her workplace than she was of what Defendant might do to her. Beedy also indicated that she and Defendant frequently argue, and during those exchanges they both verbally abuse and threaten each other. Beedy made it clear, however, that Defendant has never carried out any of his threats against her or ever laid a hand on her. In overruling the State's request to introduce evidence of Defendant's previous misdemeanor convictions for offenses involving acts of violence in order to demonstrate why Beedy might believe *Page 7 
that Defendant would harm her, the trial court remarked that "she (Beedy) is not fearful." (T. 191).
 {¶ 19} On the other hand, Beedy told co-worker April Jackson that Defendant had threatened to come there to Sterling House, break a door or window, and hurt her. Jackson testified that from the way Beedy was acting, Jackson thought Defendant was going to hurt Beedy. Importantly, Jackson testified without objection that Beedy was crying, upset, scared that she would lose her job, and scared about physical harm toherself. Beedy told police when they arrived at Sterling House in response to a call made by one of Beedy's co-workers that Defendant had threatened to come over to Sterling House, break a door or window, and "beat the shit out of" Beedy.
 {¶ 20} In describing Beedy's demeanor, Officers Pratt and Cooper indicated that Beedy was very upset and nervous, sweating, shaking, walking around very fast, and at times crying. During her testimony Beedy acknowledged that Defendant had threatened to come over to her workplace and "beat her ass," and that Defendant's threat "kind of worried her a little bit" because she never knew what he was going to do when he's intoxicated. Beedy also admitted that she experienced a little fear, was nervous, and acted in a way that would cause the police to believe that she was fearful. *Page 8 
 {¶ 21} The totality of this evidence permits a reasonable inference by the jury that Beedy believed that Defendant would cause her serious physical harm. The credibility of the various witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury, to resolve. DeHass.
 {¶ 22} The jury did not lose its way simply because it chose not to believe that portion of Beedy's trial testimony where she attempted to minimize the impact of Defendant's threats by stating that she did not believe Defendant was going to harm her, and that she was more worried about losing her job than about what Defendant might do. The jury might believe that Beedy was trying to protect a man she still loves and wants to remain in a relationship with. Reviewing this entire record, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. We find that Defendant's convictions are therefore not against the manifest weight of the evidence.
 {¶ 23} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 24} "APPELLANT'S STATEMENT TO THE POLICE SHOULD HAVE BEEN SUPPRESSED AS IT WAS TAKEN WHILE APPELLANT WAS IN CUSTODY AND WITHOUT APPELLANT FIRST BEING READ HIS MIRANDA RIGHTS." *Page 9 
 {¶ 25} Defendant argues that his acknowledgment to Officers Pratt and Cooper that he made the phone call to Doreen Beedy, and his further promise not to bother Beedy anymore, should not have been admitted into evidence because they were the product of custodial interrogation that occurred without Defendant's having been given the appropriate warnings pursuant to Miranda v. Arizona (1964), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
 {¶ 26} After making contact with Defendant at the Logan Street residence, police had Defendant sit in the rear seat of a police cruiser while they pursued their investigation and interviewed the other residents of the Logan Street residence.
 {¶ 27} The officers testified that they did this because Defendant was intoxicated and kept trying to leave the scene. After completing their interviews of the residents, and learning that Defendant made a phone call from that residence, Officers Pratt and Cooper returned to the police cruiser and confronted Defendant about the phone call made to Doreen Beedy. Defendant acknowledged that he made the call to Beedy, and he promised not to bother her anymore.
 {¶ 28} Although Defendant now claims that his acknowledgment of the phone call to Beedy and his promise not to bother her anymore should not have been admitted absent proof that police first informed him of hisMiranda rights, *Page 10 
the alleged deprivation of his Fifth Amendment right is a matter Defendant was required to raise before trial via a motion to suppress that evidence. Crim.R. 12(C)(3). No motion to suppress the evidence was filed by Defendant, and the evidence about which Defendant now complains was admitted at trial without objection from Defendant. Accordingly, Defendant has waived all but plain error in the admission of that evidence. State v. Allen, 73 Ohio St.3d 626, 1995-Ohio-283.
 {¶ 29} Notice of plain error is to be taken only under exceptional circumstances to prevent a manifest miscarriage of justice, and does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. State v. Long (1978),53 Ohio St2d 91; State v. Moreland (1990), 50 Ohio St.3d 58. In this case there is ample evidence from the various witnesses, including April Jackson, Officers Pratt and Cooper, and Doreen Beedy that Defendant made the threatening phone call in question to Beedy. Thus, we cannot find that but for evidence of Defendant's acknowledgment that he made the call, he would have been acquitted. Plain error has not been demonstrated.
 {¶ 30} Defendant's second assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And DONOVAN, J., concur. *Page 1