DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, following a jury trial, wherein defendant-appellant, Nicholas Sayre, was found guilty of felonious assault, in violation of R.C. 2903.11.
Appellant sets forth the following assignments of error:
"ASSIGNMENT OF ERROR NO. 1
 "THE TRIAL COURT ERRED BY EXCLUDING CROSS EXAMINATION OF THE VICTIM ON PRIOR CONDUCT CLEARLY PROBATIVE OF TRUTHFULNESS AND ESTABLISHING A MOTIVE OE BIAS AGAINST THE DEFENDANT, THUS DENYING APPELLANT THE RIGHT TO CROSS-EXAMINE WITNESSES AGAINST HIM.
"ASSIGNMENT OF ERROR NO. 2
 "THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION, UNDER THE GUISE OF REBUTTAL EVIDENCE, TO RECALL WITNESSES TO SIMPLY RESTATE THE STATE'S CASE IN CHIEF AND FOR NOTHING MORE THAN REINFORCING THE STATE'S CASE.
"ASSIGNMENT OF ERROR NO. 3
 "THE TRIAL COURT ERRED AND WAS SO INCONSISTENT IN ITS EVIDENTIARY RULINGS THAT THE CUMULATIVE EFFECT WAS PREJUDICIAL ERROR AS TO APPELLANT AND DENIED HIM A FAIR TRIAL.
"ASSIGNMENT OF ERROR NO. 4
 "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO TWO (2) YEARS WITH THE OHIO DEPARTMENT OF REHABILITATIONS [SIC] AND CORRECTIONS."
The following facts are relevant to the issues raised on appeal. At approximately 2:30 a.m. on October 27, 1999, appellant and his friend, Joshua Brassell, were exiting a bar known as Uptown/Downtown located in Bowling Green, Wood County, Ohio. A large group of bar patrons were congregating in front of the bar and appellant was involved in a pushing match with an unidentified male. At that time, Bowling Green Police Officer Gordon Finger handcuffed appellant. Appellant's friend, Brassell, began announcing to the crowd that appellant was a police officer.[1] Appellant, after talking with the officer, was released with the admonition that he and Brassell go home.
Brassell and appellant began walking east on Court Street toward appellant's car. At that time, the victim, Neely Phillips, and her friends, David Melton, Jeremy Herod, Erin Severance and a woman named Jenny, were also walking to their car. The parties began arguing. Brassell became involved in a fist fight with Melton and Herod; Sayre was standing nearby.
At some point during the altercation, Phillips got hit in the face causing her to fall to the ground. The punch or punches broke her nose and fractured her left eye socket. Her friends helped her up and took her to a restaurant at the corner of Main and Court Streets to clean the blood off of her face. They then proceeded to take her to the hospital.
Immediately after Phillips was hit, appellant and Brassell left in appellant's pick-up truck and returned to Findlay, Ohio, about forty-five minutes away. At approximately 3:30 a.m., Brassell called the Bowling Green Police Department to report that he had been assaulted. He stated that he had been hit by a male and that if he came into the station the next day the black eye would still be there. When he went to the police station the next day, he stated that it was a woman who had given him the black eye.
Phillips and her friends, Melton and Herod, also went to the police station the next day to make a report. On November 1, 1999, Phillips and Melton positively identified appellant from a photo array. Michael Vatan, an employee at the Uptown/Downtown bar who claimed to have seen the fight, was not able to identify appellant even though he was certain that the "white guy" rather than the "black guy" hit Phillips.
The trial on the matter commenced on July 11, 2000. Appellant's defense was that he was not the one who hit Phillips but that it was Brassell. Brassell testified that he, in fact, was the one that hit Phillips but that it was done in self-defense only after she hit him. The state presented testimony that Brassell could not have hit Phillips because at the time she was hit, he was involved in an altercation with Melton and Herod. The state also presented the theory that Brassell was just "covering" for appellant who, as a result of the incident, was in jeopardy of permanently ending his law enforcement career.
On July 13, 2000, the jury returned a guilty verdict. On September 18, 2000, appellant was sentenced to a two-year term of imprisonment. This appeal timely followed.
In appellant's first assignment of error, he contends that the trial court erred when it prevented defense counsel from cross-examining the victim, Neely Phillips, regarding inconsistent statements given to law enforcement regarding prior unrelated incidents. Appellant contends that such evidence is probative of her truthfulness under Evid.R. 608(B) and, under Evid.R. 616, demonstrates bias against police officers. The state, conversely, argues that a motion in limine was filed and granted as to Phillips's prior juvenile adjudications and adult charges. The state also contends that the incidents are not probative of her truthfulness or untruthfulness and that the only effect of such testimony would be to establish propensity, i.e., that because Phillips has made false police reports in the past, she must have made a false report against appellant. Further, the state argues that Phillips has never been accused of alleging police wrongdoing and then later recanting.
It is well-established that the scope and admissibility of cross-examination are matters within the sound discretion of the trial judge. O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163. Thus, when the trial court admits or excludes certain evidence from trial, the order or ruling of the court will not be reversed absent a clear and prejudicial abuse of discretion. Id.
Evid.R. 608 provides:
 "Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
Thus, according to the rule, if the evidence is clearly probative of the witness's truthfulness or untruthfulness, a trial court, in its discretion, may permit cross-examination as to such specific instances.
Evid.R. 616 states, in pertinent part:
 "In addition to other methods, a witness may be impeached by any of the following methods:
 "(A) Bias. Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."
In the instant case, appellant argued that there were several incidents over the preceding four or five years where Phillips was either the alleged perpetrator or victim. In particular were two instances where Phillips allegedly changed her story. First, she reported that she had been shot at from a pick-up truck. She later stated that the man only threatened to shoot someone and that she did not see a gun. In the second incident, Phillips reported to police that she had observed two males abduct a third male. Phillips later stated that she saw all three males exit the vehicle, wrestle around, and then two of the males throw the third back into the truck. She stated that she was not sure if they were serious or just "goofing around."
After hearing the above accounts and arguments from the respective parties, the trial court concluded:
 "As to the matters we discussed earlier this morning, the Court finds and it seems the four cases presented to the Court last night indicate that Rule 404(B) tends to be the predominating rule. And absent the very clear indication that one of the rules under the 600 series would be applicable, 404 should be deferred to.
 "The Court further finds 608(B), the discretion of the Court is invoked. Particularly it seems to the Court that the prejudicial value of the material sought to be introduced by the Defendant far exceeds the probative value of the material.
 "Finally, under 616, again, that indicates — or the Defendant is saying that this evidence would indicate bias. And, again, even if the information was produced, the Court isn't clear exactly how that is going to show any bias. * * *."
Upon review of the trial court's findings, relevant portions of the record, and applicable statutory and case law, we cannot say the trial court abused its discretion by excluding cross-examination of Phillips as to prior police reports.
Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant argues that the trial court erroneously permitted the state to call or recall certain witnesses during its rebuttal which served only to restate or reinforce its case.
R.C. 2945.10 allows the state to present rebuttal evidence after the close of the defendant's case. The decision of whether to admit rebuttal evidence lies within the discretion of the trial court and such discretion will not be reversed on appeal absent an abuse of discretion.State v. Graven (1978), 54 Ohio St.2d 114, 115.
During rebuttal, the state called Bowling Green Police Dispatcher Laurie Whitney to authenticate the audiotape of Brassell's call to the Bowling Green Police Department reporting that he had been assaulted. Appellant contends that Whitney was never disclosed as a potential witness and neither was the existence or intent to use the audiotape. Appellant further argues that Brassell did not deny the information given to the dispatcher; thus, the testimony was not new, it was merely to reinforce the state's case. In response, the state argues that it was not aware that Brassell was going to testify until the day of trial and Whitney provided proper rebuttal evidence of Brassell's testimony that he had been hit by Phillips, but he admitted that he could have told the dispatcher that he was hit by a male.
Upon review of the relevant portions of the transcript, we find that Whitney's testimony was, in fact, proper rebuttal testimony. The fact that Brassell told the dispatcher that he was hit by a male and that the black eye would still be there the next day if he were to come to the station discredits his later testimony on cross-examination that Phillips gave him the black eye.
Appellant next argues that the testimony of Susan Hamilton was prejudicial because her testimony was used to present the appearance of defense counsel's impropriety in that Hamilton testified that defense counsel's daughter worked at the same night club and had inquired of Hamilton whether she knew witness Jamie Yates's telephone number. The state contends that Hamilton's testimony was intended to impeach Yates's testimony that Phillips told her that she was hit by a "nigger," but that ultimately Hamilton's testimony was not allowed due to foundation problems.
We agree with appellant and the trial court that Hamilton's reference to defense counsel's daughter had no relevance to the trial; however, we find that Hamilton was potentially a legitimate rebuttal witness and, accordingly, find that the state did not, as appellant contends, engage in prosecutorial misconduct.
Appellant next asserts that the state improperly recalled bar manager, Cameron Russell, to testify that appellant and Brassell were intoxicated at the bar and that he kept an eye on them. The state contends that this testimony was elicited to contradict appellant's and Brassell's testimony that they had been "perfect gentlemen."
On review of the relevant testimony, when asked if appellant and Brassell were "perfect gentlemen" at the bar, appellant answered: "As far as I know." Brassell testified that they had four or five beers each at the bar that night; he did not testify as to their behavior. Appellant's testimony that he and Brassell has been "perfect gentlemen" and had not been boisterous was challenged by Russell's rebuttal testimony that appellant and Brassell were intoxicated and that he had been notified by the bartender of their behavior. Russell did state that such behavior was "normal" within the realm of intoxicated behavior. We find that such rebuttal evidence was appropriate.
Finally, appellant challenges the state's recalling of Phillips on rebuttal to testify that she did not hit either appellant or Brassell. We find that Phillips's testimony was proper because Brassell testified that he struck Phillips in self-defense only after she struck him.
Based on the foregoing, we find that the trial court did not abuse its discretion in allowing the state's rebuttal evidence. Accordingly, appellant's second assignment of error is not well-taken.
In appellant's third assignment of error, he argues that he was prejudiced by the cumulative effect of the trial court's inconsistent rulings on evidentiary matters. The state contends that the assignment of error fails because appellant has failed to demonstrate multiple instances of harmless error.
Addressing the issue of cumulative error, the Supreme Court of Ohio has held that a conviction may be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each single instance of error does not individually constitute cause for reversal. State v. Garner (1995),74 Ohio St.3d 49, 64, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. In order to show that the effect of the errors was cumulative and prejudicial so as to deny him a fair trial, appellant must show that there is a reasonable probability that without these errors, the outcome of the trial would have been different. Statev. Moreland (1990), 50 Ohio St.3d 58, 69.
Appellant first contends that the trial court erroneously sustained "numerous" hearsay objections during the cross-examination of David Melton pertaining to alleged conversations he had with Phillips following the assault and prior to reporting the incident to police. The testimony proceeded as follows:
 "Q: Before going downtown to talk to the police, you and Neely and Jeremy got together and discussed what had happened the night before, correct?
"A: We just tried to figure out what happened.
"Q: Right.
"A: Like any normal person would do.
 "Q: At that point you didn't know what happened. You had to figure it out, put it together, right?
"A: Yes, sir.
"Q: Neely did not know who assaulted her, correct?
"MR. BISHOP: Objection. If he knows.
"Q: If you know.
"A: I don't know.
"Q: Did she tell you that?
 "MR. BISHOP: Objection. Hearsay. And he's being asked to speculate the state of mind of another.
"THE COURT: Objection is sustained."
Appellant contends that the purported out-of-court statements made by Phillips were admissible to prove that they were made, not that they were true. Appellant argues that Phillips previously denied making such comments, though he does not indicate when or under what circumstances. The state, however, contends that appellant never argued to the trial court that such statements were to be used only for impeachment purposes, and the court properly exercised its discretion in sustaining the objection. We agree.
At the outset we note that when asked if Melton knew whether Phillips did not know who assaulted her he stated: "I don't know." Assuming Phillips had made statements to that effect, such statements would be inadmissible hearsay under Evid.R. 801(C). Further, Evid.R. 803(3) which permits testimony as to the declarant's then existing state of mind or mental or physical condition specifically excludes statements of "memory or belief to prove the fact remembered or believed * * *."
Appellant next argues that the trial court erroneously sustained hearsay objections during the testimony of his investigator, Charles Free, which was intended to impeach the credibility of Cameron Russell. Appellant further argues that the ruling was inconsistent with the court's ruling on the admission of Jamie Yates's deposition testimony used to impeach Phillips's credibility.
Charles Free was called by appellant to "clarify" the testimony of defense witness, Cameron Russell, who was decidedly confused as to the statements of Vatan regarding when the "black guy" allegedly hit a "white girl". The state argued and the court agreed that appellant was attempting to impeach his own witness and had not established surprise under Evid.R. 607(A).[2] The trial court further determined that the testimony of Free would merely be a retelling or rehashing of Russell's testimony and not helpful to the jury.
Russell testified that around the time of the incident Vatan, an employee of Uptown/Downtown, entered the bar and stated that he had just seen a "black guy" hit a girl. This testimony fits within the hearsay exception under Evid.R. 803(1), present sense impression. Russell's recounting to Free of what Vatan told him some months earlier does not fit within an exception to the rule against hearsay and is, thus, inadmissible hearsay within hearsay. See Evid.R. 805. In any event, upon review of the testimony at issue we cannot say that trial court abused its discretion when it determined that Free's testimony was merely a retelling of Russell's testimony.
The above situation is distinguishable from the trial court's ruling relative to Yates's impeachment testimony. Yates testified that Phillips told her that she was told a "nigger" hit her. The trial court instructed the jury that the statement was not to be considered for its truth, only that it was made. In this situation, appellant was using the statement to impeach a state witness, not his own witness.
Appellant further argues that the trial court erroneously overruled his objection to the state's question of Jeremy Herod as to whether Phillips could have been hit by Brassell. Appellant further contends that the state made a similar objection which was sustained.
Upon review of the testimony we find that the state laid a proper foundation prior to making the inquiry of Herod. However, appellant, without foundation, asked Herod whether an incident in the course of events "could have been based upon [his] sketchy recollection * * *." The objection was properly sustained.
Finally, appellant contends that the trial court erroneously prevented him from questioning Bowling Green Police Officer Paul Tyson regarding the information provided to him by Neely Phillips. The proffered testimony arguably was not hearsay because it was intended to show that Phillips made certain statements which the officer relied upon, not that they were true. The trial court apparently sustained the state's objection because Phillips was already cross-examined regarding such statements. Assuming that the testimony was wrongly excluded such error, if any, was harmless because Phillips was cross-examined as to such statements and the officer was permitted to testify as to the course and manner of his investigation.
Because we have not found multiple instances of harmless error, there can be no cumulative error. Accordingly, appellant's third assignment of error is not well-taken.
Appellant's fourth and final assignment of error argues that the trial court erred in sentencing appellant to a two-year term of imprisonment. Appellant contends that the trial court's finding that appellant was not eligible for a community control sanction was contrary to the facts presented at trial.
A trial court's sentencing decision will not be reversed absent a showing of an abuse of discretion. State v. Cooks (1997),125 Ohio App.3d 116, 120. An abuse of discretion is more that a mere error of law or judgment, it implies an unreasonable, arbitrary, unconscionable attitude on the part of the trial court. Id., citing Statev. Long (1978), 53 Ohio St.2d 91, 98.
Appellant was convicted of felonious assault, a second degree felony. A presumption in favor of a prison term exists for such offense. R.C.2929.13(D). A second-degree felon may be sentenced to a two, three, four, five, six, seven, or eight-year prison term. Appellant was sentenced to the minimum prison term of two years.
The trial court may, in its discretion, impose a community control sanction in lieu of imprisonment. However, before doing so the trial court is required, under R.C. 2929.13(D), to find that a community control sanction would adequately punish the offender and protect the public from future crime and that a community control sanction would not demean the seriousness of the offense. In order to make such determinations, a sentencing court is referred to the seriousness and recidivism factors of R.C. 2929.12.
Relative to the error complained of, the court made the following findings:
 "Your review of the seriousness factors indicates that the victim suffered serious physical, psychological, or economic harm. While Mr. Bishop would have the court find that Mr. Sayre's job as a policeman held him to a higher standard in all of his activities and actions, I don't feel that is necessarily the case when Mr. Sayre's off duty. The court will note in the same vein that the offender was provoked.
 "The Court does note that under the recidivism factors that there was one prior criminal conviction. The Court further notes in that light that the offender has not been adjudicated a delinquent, and Mr. Sayre has been law-abiding for a significant number of years. Nonetheless, to impose community control sanctions, the Court must find — make two specific findings that are set forth in 2929.13(D)(1) and (2), and the Court cannot make those findings; therefore, feels that a prison sentence is appropriate."
Appellant argues that the findings made by the court pursuant to R.C.2929.12 were inconsistent with a prison sentence. We disagree. The trial court found that Phillips suffered serious physical, psychological, or economic harm. The court did note that appellant was provoked, but further indicated that appellant had one prior criminal conviction. As set forth above, a second-degree felony conviction carries a presumption in favor of a prison term. We cannot say that the trial court abused its discretion when it failed to find that the presumption had been rebutted and imposed the minimum prison term. Accordingly, appellant's fourth assignment of error is not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
 ____________________________ Mark L. Pietrykowski, P.J.
 Peter M. Handwork, J., James R. Sherck, J. CONCUR.
[1] At the time of the incident appellant was a police officer with the Kenton, Ohio Police Department.
[2] Evid.R. 607(A) provides:
 "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a), 801(D)(2), or 803."