OPINION *Page 2 
{¶ 1} Defendant-Appellant, Katherine Dixon, appeals the judgment of the Crawford County Court of Common Pleas, convicting her of assault on a peace officer. On appeal, Dixon argues that the State failed to prove all the elements of R.C. 2903.13 and that the jury's verdict was against the manifest weight of the evidence. Finding that the evidence supports her conviction, we affirm the judgment of the trial court.
 {¶ 2} In September 2005, the Crawford County Grand Jury indicted Dixon on one count of assault on a peace officer in violation of R.C.2903.13(A), a felony of the fourth degree. Dixon entered a plea of not guilty to the charge.
 {¶ 3} In June 2006, the case proceeded to a jury trial, during which the following testimony was heard.
 {¶ 4} Deputy Lyle Chasse, who worked for the Galion Police Department, testified that on September 8, 2005, at approximately 7 p.m., while in uniform, operating a marked Galion Police Department vehicle, and as a sworn Peace Officer in the State of Ohio, his dispatcher received a complaint at a residence in the City of Galion, Crawford County, Ohio; that Donna Russell made a complaint that someone had wrapped duct tape around her cat's feet; that he went to Russell's residence to talk to her about the incident and Russell told him that she *Page 3 
believed that her neighbor's children duct taped her cat's feet; and, that he left his car parked on the street and walked to Russell's neighbor's residence.
 {¶ 5} Deputy Chasse continued that while he was walking towards the residence, he noticed a female, later determined to be Melissa Dixon, sitting on top of the roof, who said an expletive and went into the house; that he knocked on the front door and Melissa answered the door with her sister Jennifer; that when he asked them about what had happened to the neighbor's cat, they started yelling profanity at him and elevated the tone of their voices; that Jennifer shoved him backwards and slammed the front door; that after Jennifer shoved him, he entered the house and told Jennifer that she was under arrest for assault; that once he got a hold of Jennifer, Melissa jumped on his back and started hitting him on his back and back of his head; that he threw Jennifer down and tried to get Melissa off his back; that he threw Melissa on top of Jennifer and Melissa kicked him in his private area and ran to the other side of the room; that he then reached down and was trying to put handcuffs on Jennifer, when Dixon came out of her bedroom and screamed at him; that Dixon then shoved him with a high rate of speed, while telling him that he needed a female officer to arrest her daughter; that he went towards Dixon and she kept pushing him; that he had to call for back up; that while he was placing handcuffs on Dixon, Melissa jumped on him again and started hitting his back and top of his head; that Dixon shoved him at least six *Page 4 
times, with enough force to push him back; and, that he is five feet eleven inches tall and weighs two hundred sixty pounds.
 {¶ 6} Deputy Chasse continued that once he took Dixon to the police station, she indicated that she did not know that he was a police officer when she came out of her bedroom and that when he asked her why she would say that he needed to be a female police officer to arrest her daughter, she did not have an answer, but kept saying that she did not know that he was a police officer.
 {¶ 7} On cross-examination, Deputy Chasse indicated that he did not have a warrant when he went to the Dixon residence, but was there to investigate a cruelty to an animal call; that after Jennifer pushed him, she and Melissa slammed the front door; that he did not get handcuffs on either of the girls; that Dixon came out of a side room, while he was leaning over Jennifer attempting to handcuff her, and shoved him with both hands; that after regaining his balance, Dixon continued to push him away; and, that he was wearing a bullet proof vest during the incident.
 {¶ 8} After Deputy Chasse testified, the State rested.
 {¶ 9} Dixon then testified on her own behalf. Dixon testified that she is married and has three children, including Jennifer and Melissa; that on September 8, 2005, after taking a pain pill and a sinus pill, she was in her bedroom sleeping, when she awoke to Melissa screaming; that she then left her bedroom, saw someone standing over Jennifer, and ran towards and pushed the person standing *Page 5 
over Jennifer; that she realized after pushing him that Deputy Chasse was the person standing over Jennifer; that she did not say that Deputy Chasse needed a female officer to arrest Jennifer; that she only pushed Deputy Chasse once and did not kick or strike him; that Deputy Chasse placed her under arrest and took her outside the residence; that she was taken to the police station and had a conversation with Deputy Chasse; that she did not realize that her daughters had had a confrontation with Deputy Chasse, before she shoved him; and, that she did not shove Deputy Chasse five or six times.
 {¶ 10} On cross-examination, Dixon admitted that she intentionally pushed the person standing over her daughter; that she pushed him hard enough to make him stumble backwards; and, that she pushed Deputy Chasse. Additionally, Dixon testified that she did not tell Deputy Chasse that he needed to be female in order to arrest her daughter prior to shoving him; that she did not use profanity in front of him; and, that she never saw her daughters hit Deputy Chasse.
 {¶ 11} After Dixon testified, she rested and the jury found Dixon guilty of one count of assault on a peace officer in violation of R.C.2903.13(A), a felony of the fourth degree. Subsequently, the trial court sentenced her to three years of community control.
 {¶ 12} It is from this judgment Dixon appeals, presenting the following assignments of error for our review. *Page 6 
 Assignment of Error No. I THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. II THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE ELEMENTS OF THE CHARGE OF ASSAULTING A POLICE OFFICER UNDER ORC 2903.13.
 {¶ 13} Due to the nature of Dixon's assignments of error, we elect to address them out of order.
 Assignment of Error No. II {¶ 14} In her second assignment of error, Dixon argues that the State failed to prove beyond a reasonable doubt that she knowingly caused physical harm to Deputy Chasse. Specifically, Dixon argues that the State failed to provide sufficient evidence to prove the elements of R.C. 2903.13(A).
 {¶ 15} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, ¶ 47, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Sufficiency is a test of adequacy, State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, superseded by constitutional *Page 7 
amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955),162 Ohio St. 486, superseded by constitutional amendment on other grounds as stated by Smith, supra.
 {¶ 16} We initially note that Dixon failed to move for a Crim.R. 29(A) judgment of acquittal. Failing to move for a judgment of acquittal pursuant to Crim.R. 29(A), Dixon waived all but plain error regarding the sufficiency of the evidence. See Crim.R. 29(A); State v. Roe (1989),41 Ohio St.3d 18, 25; State v. Moreland (1990), 50 Ohio St.3d 58, 62;Cleveland v. Ellsworth, 8th Dist. No. 83040, 2004-Ohio-4092, ¶ 7. In order to have plain error under Crim.R. 52(B) there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.
 {¶ 17} R.C. 2903.13(A) provides that "[n]o person shall knowingly cause * * * harm to another or to another's unborn." R.C. 2903.13(C)(3) further provides that if the victim of the assault is a peace officer performing his official duties, the offense is a felony of the fourth degree. *Page 8 
 {¶ 18} Dixon argues that the jury was not presented with any evidence to show that she knowingly caused physical harm to Deputy Chasse. Additionally, Dixon argues that since Deputy Chasse was wearing a bullet proof vest and the State did not provide evidence that Depute Chasse suffered any type of harm from being pushed, the jury was not presented with any evidence that she caused physical harm to Deputy Chasse. We disagree.
 {¶ 19} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result." R.C.2901.22(B). R.C. 2901.01(A)(3) defines the phrase "[physical harm to persons" as meaning "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 20} Here, Deputy Chasse testified that Dixon came running out of her bedroom, immediately recognized that he was a police officer, ran at him, pushed him several times, and was kicking and flailing at him. While Dixon testified to a different account of the incident, it is the function of the jury to resolve these conflicts and determine what evidence to believe. However, viewing all of the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to have found that Dixon knowingly caused the physical harm to Deputy Chasse.
 {¶ 21} Accordingly, we overrule Dixon's second assignment of error. *Page 9 
 Assignment of Error No. I {¶ 22} In her first assignment of error, Dixon argues that the jury's verdict was against the manifest weight of the evidence. We disagree.
 {¶ 23} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 24} The jury found Dixon guilty of assaulting Deputy Chasse in violation of R.C. 2903.13(A). R.C. 2903.13(A) provides that "[n]o person shall knowingly cause * * * harm to another or to another's unborn." R.C. 2903.13(C)(3) further provides that if the victim of the assault is a peace officer performing his official duties, the offense is a felony of the fourth degree.
 {¶ 25} Here, Deputy Chasse testified that Dixon came running out of her bedroom, immediately recognized that he was a police officer, ran at him, pushed him several times, and was kicking and flailing at him. Dixon testified that she *Page 10 
was in her room, heard fighting going on, ran out without wearing her glasses, saw a dark figure keeping her daughters on the ground, instinctively ran over, and pushed the figure away. Dixon continued that once she realized that the person she pushed was Deputy Chasse, she stopped resisting and allowed herself to be taken into custody.
 {¶ 26} Although Dixon's testimony contradicts Deputy Chasse's testimony, the jury was free to believe all, part, or none of any witness' testimony. State v. Antill (1964), 176 Ohio St. 61. Here, the jury chose to believe Deputy Chasse's version of events rather than that set forth by Dixon. Because the weight to be given the evidence and the credibility of witnesses are primarily reserved for the trier of fact,State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus, we overrule Dixon's first assignment of error.
 {¶ 27} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1