OPINION *Page 2 
{¶ 1} Defendant-appellant Christopher Gauer challenges his conviction in the Stark County Court of Common Pleas on one count of violating a protective order. For the reasons that follow, we affirm.
 {¶ 2} On July 2, 2007, appellant was indicted on one count of violating a protection order, R.C. 2919.27(A)(1), a felony of the fifth degree. The charge arose when appellant, who was incarcerated, was alleged to have written or had someone else write a letter to his ex-girlfriend, Amy Gill (fna Amy Collings) in violation of a protection order. Ms. Gill and appellant are the parents of an 11-year-old son Ryan Collings. The protection order was issued in May, 2004 in a previous domestic case between the parties. The order prohibited appellant from initiating contact with Ms. Gill through telephone, fax, email, voice mail, delivery service, writing or communication by any means in person or through another person. The appellant previously had been found guilty of violating the protection order in 2005 and 2006.
 {¶ 3} Appellant pled not guilty and the matter proceeded to trial.
 {¶ 4} On July 23, 2007, appellant filed a motion to suppress certain statements made by appellant to a prison investigator without Miranda warnings. A suppression hearing was scheduled for the morning of trial on August 6, 2007. At that time, the State indicated it did not intend to use the statements to the investigator and stipulated to the motion to suppress. The trial court agreed to proceed to trial with that understanding.
 {¶ 5} The State first called Ms. Gill. She testified as follows: *Page 3 
 {¶ 6} "Q. When you got home and read that letter, did you recognize the writing?
 {¶ 7} "A. Yes, I did.
 {¶ 8} "Q. Who did you recognize that writing to be?
 {¶ 9} "A. "Chris's.
 {¶ 10} "Q. How did you recognize his writing?
 {¶ 11} "A. The times he's been in jail before, I received letters. I received cards. I received drawings with writing on it.
 {¶ 12} "Q. Have you seen him write neat before?
 {¶ 13} "A. Yes.
 {¶ 14} "Q. Did that appear to be the same type of writing that he would usually write?
 {¶ 15} "A. He can do it neat or sloppy, whichever way he's feeling towards you.
 {¶ 16} "Q. And in that writing how would you describe that?
 {¶ 17} "A. That he's trying to disguise it."
 {¶ 18} Transcript at 82-83.
 {¶ 19} Ms. Gill then read the letter to the jury (State's Exhibit 4).
 {¶ 20} "A. Says "Dear Amy. Hello. Your ex-dude wanted me to write you because he heard about your dad.
 {¶ 21} "* * *
 {¶ 22} "He wants you to know he's sorry and his sympathy goes out to you and your family. He said he's sorry he not able to there to hold you, give you support, and comfort you in your time of need. *Page 4 
 {¶ 23} "He said even though you and him might not see eye to eye, he still has much love for you and cares about you. You know, he's only has about a month left until he gets out, and he wants you to know if you ever need someone to talk to or ever need something, he'll always be there for you and because him and his family is all the family you really have left, that will actually be there for you, Amy. He's not mad at you for what you did to him either.
 {¶ 24} "You know he's a solid honkey and good dude. He really must care a lot about you for him to have me write you and he also said tell Ryan Hi."
 {¶ 25} Transcript at 83-84.
 {¶ 26} The State also called Michael Wylie, an investigator at the Ohio State Penitentiary, who confirmed that appellant was incarcerated at the facility in April, 2007. Per the stipulation, the State did not question Mr. Wylie regarding any statements allegedly made by appellant regarding the letter.
 {¶ 27} After the State rested its case, the defense called appellant's sister, Rena Sweitzer, to stand who stated she was familiar with Ms. Gill's reputation for being truthful or untruthful and that Ms. Gill "lies all the time". The State did not object to the question. The defense then called appellant's girlfriend, Samantha Cutlip, and she was asked the same question regarding the truthfulness of Ms. Gill, to which the State objected and the trial court sustained the objection. At the conclusion of Ms. Cutlip's testimony, the trial court called both counsel to the bench and the following colloquy occurred:
 {¶ 28} "It seems to me, counsel, can't have it both ways. Now, you filed a Motion to Suppress statements, as I understand it, that were attributed to your client admitting *Page 5 
that he caused this letter to be sent. The Court based on Miranda said, well, that evidence is going to be suppressed. You cannot then turn around, as an officer of the court, and indicate that an individual is a liar, that the letter was made up; in other words, that doesn't give you a license to do something that you know isn't right. So as far as I'm concerned, the door has been opened. If you [the State] wish to recall any one of those individuals, because I'm not going to sit here and listen to something when we know is one way only because of a ruling. It's one thing to not have it but it's another thing then to totally ignore that as an officer of the court. So let's proceed".
 {¶ 29} Transcript at 123-124.
 {¶ 30} After the defense rested, the State recalled Mr. Wylie without objection by appellant. Mr. Wylie testified that he had separated appellant from the general population and questioned him regarding the letter on two occasions. Mr. Wylie stated appellant initially denied involvement but than admitted later he "took part" in the letter to Ms. Gill. Mr. Wylie stated appellant never confessed he wrote it or had someone else send the letter. In closing argument, defense counsel argued appellant's statements to Mr. Wylie was not voluntary as appellant wanted to get back into the general population.
 {¶ 31} The jury found appellant guilty as charged and he was sentenced to 11 months in prison.
 {¶ 32} Appellant raises two Assignments of Error:
 {¶ 33} "I. THE TRIAL COURT ERRED IN REVERSING ITS DECISION TO GRANT THE APPELLANT'S MOTION TO SUPPRESS *Page 6 
 {¶ 34} "II. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 l. {¶ 35} In the first assignment of error, appellant contends the trial court improperly reversed its ruling, without an evidentiary hearing, on the issue of appellant's alleged confession to Mr. Wylie.
 {¶ 36} As an initial matter, we note the trial court did not actually issue a ruling on appellant's motion to suppression. Rather, the record reflects the trial court accepted the parties' stipulation that the State would not introduce appellant's statements to Mr. Wylie. In its case-in-chief, the State did not introduce the statements.
 {¶ 37} The trial court permitted the State to introduce the statements only after appellant had challenged Ms. Gill's reputation for honesty.
 {¶ 38} Evid. R. 608(A) states:
 {¶ 39} "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
 {¶ 40} Thus, it would be proper for the defense to question witnesses regarding Ms. Gill's character for truthfulness or untruthfulness. However, we further note that appellant did not object to the State recalling and questioning Mr. Wylie, or request a suppression hearing. Therefore, we consider the claim for plain error. *Page 7 
 {¶ 41} Pursuant to Crim. R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, syllabus 3. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise." State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894.
 {¶ 42} Upon review of the record, we find any error in the admission of appellant's statements to Mr. Wylie did not rise to the level of plain error. The testimony that appellant played "a part" in the letter is cumulative to the contents of the letter itself which implicated appellant's role in having the letter sent to Ms. Gill. A reasonable juror could have found that even if appellant did not write the letter, he directed it to be sent on his behalf which would have resulted in a violation of the protection order. Therefore, the outcome of the trial clearly would not have been different had the statements been suppressed.
 {¶ 43} Accordingly, the first assignment of error is overruled.
 II. {¶ 44} In the second assignment of error, appellant maintains his conviction for violating the protection order was against the sufficiency and manifest weight of the evidence.
 {¶ 45} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce *Page 8 
evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 46} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether a jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." Id.
 {¶ 47} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 48} In Thomkins, supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary."Id., at syllabus 3. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous *Page 9 
concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., at syllabus 4.
 {¶ 49} Appellant was charged with violating a protective order as set forth in R.C. 2919.27(A)(1), which reads:
 {¶ 50} "(A) No person shall recklessly violate the terms of any of the following:
 {¶ 51} "(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code;"
 {¶ 52} R.C. 2901.22 Culpable mental states, provides:
 {¶ 53} * * *
 {¶ 54} "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 55} We note the protection order at issue expressly prohibited appellant directly or acting through another person from contacting Ms. Gill in writing. Appellant was aware of the order as he had been previously convicted of violating same in 2005 and 2006.
 {¶ 56} Thus, even if appellant had someone else write the letter, he still violated the protective order.
 {¶ 57} Although appellant presented the testimony from witnesses, including his sister and mother, indicating that the handwriting in the letter was not similar to *Page 10 
appellant's handwriting, the jury was free to accept or reject any and all evidence offered by the appellant and assess the witness's credibility.
 {¶ 58} Upon review of the record, the trier of fact in this case could have reasonably concluded beyond a reasonable doubt, based upon the testimony of Ms. Gill and the contents of the letter, that appellant violated the protective order by either writing the letter himself or requesting that it be written and sent to Ms. Gill.
 {¶ 59} We conclude the jury did not create a manifest miscarriage of justice so as to require a new trial.
 {¶ 60} Accordingly, appellant's conviction for violating a protective order is not against the manifest weight or sufficiency of the evidence.
 {¶ 61} The second assignment of error is overruled.
Delaney, J. Farmer, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1