DECISION AND JUDGMENT ENTRY
{¶ 1} James R. Hammond appeals his three felony convictions (complicity to corrupt another with drugs, involuntary manslaughter, and permitting drug abuse) from the Jackson County Court of Common Pleas. On appeal, Hammond contends that the trial court violated Evid. R. 702(B) when it allowed an unqualified expert to render an opinion about the victim's cause of death. Because the expert's opinion did not exceed his scope of expertise, we disagree. Hammond next contends that the trial court violated Evid. R. 403(A) and unfairly prejudiced him when it allowed into evidence a video of his interrogation by police because the video contained false sexual accusations, which were not at issue in this case. Because other evidence in the record clearly shows that Hammond did not sexually assault the victim, we disagree and find that the error did not affect the outcome of the case. Finally, Hammond contends that his counsel was *Page 2 
ineffective when he failed to object to the unqualified expert's testimony about the cause of death and the introduction of the video that contained false accusations about issues outside this case. Because we addressed these issues and did not find prejudicial error, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On the evening of October 24, 2006, a number of people came to Hammond's home in Jackson, Ohio, to use drugs and drink alcohol. They included Hammond's son ("Terry"), Hammond's grandson ("Aaron"), and Kelli Jones ("victim"), a young friend of Hammond and Aaron. During the evening, the attendees took part using an array of drugs, including methadone prescribed to Hammond, oxycodone and morphine.
 {¶ 3} At one point during the evening, Hammond, Terry and Jones were in Hammond's bathroom "cooking up" a morphine injection for Jones. The facts are disputed as to who actually injected the morphine into Jones' veins. However, evidence suggested that Hammond at least held Jones' arm during the injection. Undisputed, however, is the fact that at some point after being injected with the morphine, Jones became sick and nodded in and out of consciousness on a couch. Jones was later moved to Hammond's bed where she died.
 {¶ 4} After finding Jones' body in Hammond's home, police arrested Hammond and interrogated him. During interrogation, Hammond admitted to drug use in the home. He acknowledged that he was in the bathroom with Terry and Jones while Jones was intending to inject morphine into her body. Hammond, however, denied having actually injected Jones with the morphine, but stated that he "maybe" held her arm during the injection. *Page 3 
 {¶ 5} During interrogation, an officer not only accused Hammond of contributing to Jones' death by assisting her in using drugs, but also of sexually assaulting Jones. Throughout the interrogation, the officer told Hammond that a state autopsy revealed that Jones was sexually assaulted. Hammond steadfastly denied having sexually assaulted Jones and allowed officers to inspect his back. Hammond apparently had already provided officers with a DNA sample.
 {¶ 6} A Jackson County Grand Jury eventually indicted Hammond on one count of complicity to corrupt another with drugs, a second degree felony, in violation of R.C. 2923.03; one count of involuntary manslaughter, a first degree felony, in violation of R.C. 2903.04; and one count of permitting drug abuse, a fifth degree felony, in violation of R.C. 2925.13. The grand jury did not indict Hammond for any sex offense.
 {¶ 7} Hammond entered not guilty pleas, and the case proceeded to a jury trial.
 {¶ 8} At trial, the State called Lieutenant Mannering who testified, inter alia, about his tape recorded interrogation of Hammond. The jury heard the tape recorded interrogation, which included (without objection) Mannering's accusations that Hammond had sex with Jones.
 {¶ 9} The State also called, as an expert witness, Dr. Jan Gorniack, a forensic pathologist and deputy coroner for the Franklin County Coroner's Office. She testified that Jones' death was caused by "acute intoxication by the combined effects of methadone, oxycodone, diazepam and alprazolam." She also testified that Jones' toxicology results revealed traces of morphine in her system, i.e., .19 per millimeter. Dr. Gorniack acknowledged that she did not include morphine among those drugs contributing to Jones' death. In fact, Dr. Gorniack testified that it was her understanding *Page 4 
that Jones would have died without morphine in her system. Although she did not include morphine in the cause of death, she could not explain exactly why morphine was excluded as a drug combining to cause Jones' death and deferred the explanation to Dr. John Wyman, the State's toxicologist who performed the toxicology study of Jones.
 {¶ 10} Dr. Gorniack also testified that she found no evidence that anyone sexually abused Jones. Further, she testified that at no time did she indicate to anyone that Jones' autopsy showed signs of sexual abuse.
 {¶ 11} The State called Dr. John Wyman, chief toxicologist for the Franklin County Coroner's Office, to testify. He explained that, during the investigation of Jones' death, his role was not to determine cause of death or manner of death. Instead, his role was to perform drug and chemical testing on decedent's tissue samples. After he performed such testing, the results revealed that Jones had .19 milliliters of morphine in her system, which he described as an elevated amount.
 {¶ 12} Dr. Wyman further testified that while he did hold an opinion concerning the cause of Jones' death, he believed it was inappropriate to offer his opinion because it was Dr. Gorniack's duty (as part of her job) to make that conclusion, not his duty. However, upon further questioning by the State, and without objection, Dr. Wyman concluded that "the morphine level may or may not in and of itself resulted in her death but with the combination the addition of everything together * * * is most likely why she died." The following was Dr. Wyman's testimony:
 Q. Doctor were there any substances in the samples that were submitted on Kelli Elizabeth Jones that were in particular importance to you in reaching your determination? *Page 5 
 A. You're thinking I determined her cause of death which I didn't do, am I correct?
 Q. Okay . . . well . . . act . . . actually after Dr. Gorniack's testimony she sort of deferred to you on some of the substances . . .
 A. . . . okay . . .
 Q. . . . specifically the morphine Doctor.
 A. She said she threw me on the bus.
 Q. Here it comes . . . just relax it will hurt less. Um . . . is there some significance to the morphine that was found in this sample?
 A. The level is high. Morphine causes central nervous system depression and there are, as I said, multiple CNS exposures listed here. There's a bunch of them. Methadone, oxycodone, diazepam, nordiazepam, alprazolam and the THC which is consumed tetra-hydrocannabinol . . . something . . . including THC, all of those drugs . . . six different drugs are there causing central nervous system depression. The level that is the highest is morphine. Okay . . . it's . . . it's a bad mix and the level . . . you know the levels that are present in the other CNS depressants are in trace amounts or therapeutic amounts, the morphine is at an elevated amount.
 Q. Okay . . . the morphine is elevated?
 A. Yes.
 Q. Um . . . based on your training and experience and this is sort of the way she might have thrown you into the bus, Doc . . . uh . . . would you expect he substances that were found in the sample to have caused this inter . . . to result in her death without the morphine?
 A. I . . . you know . . . it's really hard, every individual is different . . . these amounts are low; I would not have expected that. The morphine is there in an amount that *Page 6 
pushes everything over the cliff . . . um . . . you've got, as I said, a bad mix and I would expect the person to be sedated and sluggish as a result of this but not result in their death. The morphine level may or may not in and of itself resulted in her death but with the combination the addition of everything together, in my opinion, that that is I've been asked for my opinion but I'll give it, that that is most likely why she died.
 Q. So if not for the morphine you would have not expected her to have . . .
 A. I would not. Now let me say this, when the pathologists do an autopsy, they're looking for cause of death and that's not always easy to find. Very often, it is a diagnosis . . . diagnosis of exclusion so that after the autopsy if they have found nothing they can say this is why this person died and we come back with all these CNS depressants that's the one thing that they have to hang their hat on and say this is most likely, my opinion, why the person died. Because they have nothing else and that's how . . . how it's done.
 {¶ 13} The jury found Hammond guilty as to all three counts. The court accepted the jury's verdicts and sentenced Hammond accordingly.
 {¶ 14} Hammond appeals his three convictions and asserts the following three[1] assignments of error: I. "Under Evid. R. 702(B), an expert witness is qualified because of specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony. Toxicologist Dr. Wyman testified to Kelli Jones' cause of death after stating that it was not his job to determine, nor was it appropriate for him to give his opinion regarding cause of death. The trial court committed plain error in admitting Dr. Wyman's testimony, as he was not qualified as an expert in determining cause of death, the subject matter of his testimony." II. "Under Evid. R. 403(A), relevant evidence must *Page 7 
be excluded when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. A lengthy video of the police interrogation of Mr. Hammond was played for the jury at trial, even though it included false accusations not at issue. The trial court committed plain error in allowing the tape to be played for the jury." And, III. "An attorney renders ineffective assistance when deficient performance prejudices the client. Mr. Hammond's trial counsel rendered ineffective assistance in failing to object to Dr. Wyman's testimony outside the scope of his expertise, [and] the introduction of unfairly prejudicial evidence * * *. Trial counsel rendered ineffective assistance in violation of theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 II. {¶ 15} Hammond contends in his first assignment of error that the trial court erred when it allowed toxicologist Dr. Wyman to testify as to the cause of death of Kelli Jones. Hammond asserts that Dr. Wyman was not qualified as an expert in determining the cause of death, which was the subject matter of his testimony. He maintains that Dr. Wyman's testimony violated Evid. R. 702(B). However, Hammond did not raise this issue in the trial court. Thus, he has forfeited all but plain error.
 {¶ 16} Pursuant to Crim. R. 52(B), we may notice plain errors or defects affecting substantial rights, although they were not brought to the attention of the court. The Supreme Court of Ohio has found that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." State v. Barnes (2002), 94 Ohio St.3d 21, 27,2002-Ohio-68. See State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642. First, an error must exist. *Page 8 
Id., citing State v. Hill (2001), 92 Ohio St.3d 191, 200, citingUnited States v. Olano (1993), 507 U.S. 725, 732, (interpreting Crim. R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the error must be plain, obvious, or clear. Id. (Citations omitted.) Third, the error must affect "substantial rights," which the court has interpreted to mean that "the trial court's error must have affected the outcome." Id., citing Hill at 205; State v. Moreland (1990),50 Ohio St.3d 58, 62, State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 17} "The burden of demonstrating plain error is on the party asserting it. (Cite omitted.) A reversal is warranted if the party can prove that the outcome `would have been different absent the error.'" (Cite omitted.) Payne at ¶ 17. A reviewing court should use its discretion under Crim. R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, supra, at paragraph three of the syllabus.
 {¶ 18} Evid. R. 702 states, "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness isqualified as an expert by specialized knowledge, skill, experience,training, or education regarding the subject matter of thetestimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *." (Emphasis added.)
 {¶ 19} Here, after reviewing the record, we find that Dr. Wyman's opinion did not exceed his scope of expertise. Dr. Wyman is a board certified general toxicologist and forensic toxicologist. He has testified in previous criminal cases and his testimony has been *Page 9 
previously accepted by Ohio courts as proper expert testimony. At the time of trial, Dr. Wyman was Chief Toxicologist at the Franklin County Coroner's Office. He worked at that office for almost five years, serving both as a toxicologist and as Chief Toxicologist. Before this employment, Dr. Wyman served for approximately five years in the Montgomery County Coroner's Office, and held the position of Chief Toxicologist at that office as well.
 {¶ 20} In his current position, Dr. Wyman clearly testified that some of his duties were to offer his opinions to the pathologist and "to help the pathologist to determine cause of death." However, he clarified that the pathologist is the person ultimately responsible for determining the official cause and manner of death. Nevertheless, Dr. Wyman clearly stated that he had an opinion as to Jones' cause of death, and his only hesitancy in offering that opinion was the fact that it was not his duty within the Franklin County Coroner's Office to officially determine a decedent's cause of death. Despite his hesitancy, Dr. Wyman ultimately offered his opinion that the morphine level in Jones' system, in addition to all the other drugs in her system, "is most likely why she died."
 {¶ 21} The crux of Hammond's argument is that because officially determining the cause of death is not within the scope of Dr. Wyman's job duties as Chief Toxicologist at the Franklin County Coroner's Office, he is not qualified to offer such an expert opinion. However, the delineation of duties within the Franklin County Coroner's Office does not make Dr. Wyman's opinion regarding Jones' cause of death any less reliable, nor does it make Dr. Wyman any less qualified to offer such an opinion. Dr. Wyman testified himself that part of his duties is to help the pathologist determine cause of death. The jury heard this testimony and could weigh it accordingly. Therefore, we do not find any *Page 10 
error, let alone plain error. Further, even if error occurred, it did not affect the outcome of the trial.
 {¶ 22} According, we overrule Hammond's first assignment of error.
 III. {¶ 23} Hammond contends in his second assignment of error that the trial court erred when it allowed into evidence a "lengthy video of the police interrogation of" him because "it included false [sexual] accusations not at issue." Hammond asserts that the sexual assault accusations were not relevant and violated Evid. R. 403(A). He claims that the probative value of the video was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Again, because Hammond did not raise this issue in the trial court, he has forfeited all but plain error.
 {¶ 24} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Evid. R. 401. However, Evid. R. 403(A) states, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 25} Here, the accusations of sexual assault were irrelevant to the proceedings. First, there was no medical evidence admitted at trial showing that any sexual assault actually did occur. In fact, Dr. Gorniack testified that she found no evidence of sexual assault and, thus, never told anyone that such evidence existed. Further, Hammond was not indicted for any sex offense. As a result, the numerous accusations of sexual assault contained in Hammond's taped interrogation should not have been admitted at trial. Admission of such baseless accusations was obvious and clear error.
 {¶ 26} However, under our plain error analysis, the error (though egregious) must *Page 11 
ultimately have affected the outcome of the trial. We cannot find the same. Throughout the course of the interrogation, Lieutenant Mannering accused Hammond of having sex with Jones based on an autopsy finding that Jones was sexually assaulted. However, Dr. Gorniack, the pathologist and deputy coroner who performed the autopsy on Jones, testified that she found no physical evidence of sexual abuse and never reported a finding of sexual abuse to Jackson County's coroner.
 {¶ 27} Thus, the State's own expert witness, Dr. Gorniack, informed the jury that the lieutenant's allegations were baseless. As a result, we do not find plain error.
 {¶ 28} According, we overrule Hammond's second assignment of error.
 IV. {¶ 29} Hammond contends in his third assignment of error that he received ineffective assistance of counsel. He asserts that his trial attorney failed to object to the issues he raises in his first and second assignments of error, i.e., counsel's failing to object to Dr. Wyman's testimony outside the scope of his expertise and the introduction of unfairly prejudicial evidence.
 {¶ 30} "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness." State v. Wright, Washington App. No. 00CA39, 2001-Ohio-2473, citing State v. Hamblin (1988), 37 Ohio St.3d 153, cert. den. (1988), 488 U.S. 975; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient* * *" which "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment[;]" and (2) "that the deficient performance *Page 12 
prejudiced the defense* * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687. Absent both showings, "it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id.
 {¶ 31} This court "when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action." Id., citing State v. Phillips
(1995), 74 Ohio St.3d 72. Instead, this court "must be highly deferential." Id., citing Strickland at 689. Further, "a reviewing court: `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., citing Strickland at 689.
 {¶ 32} Here, we did not find that any error regarding the admission of evidence under Evid. R. 702(B) and/or Evid. R. 403(A) ultimately affected the outcome of the trial. (See our analysis under assignment of error one and assignment of error two.) Specifically, we first found that the trial court did not violate Evid. R. 702(B) because the expert in question did not exceed his scope of expertise. Second, we found that the trial court violated Evid. R. 403(A) when it allowed into evidence a video where the questioning officer repeatedly falsely accused Hammond of sexually assaulting the victim. However, because other evidence clearly shows that Hammond did not sexually assault the victim, including the state's own witness, we found that the error did not affect the outcome of the case. For the same reasons, we now find that trial counsel's failure to *Page 13 
object under Evid. R. 702(B) and Evid. R. 403(A) did not prejudice the defense. That is, we cannot find that counsel's errors were so serious as to deprive Hammond of a fair trial. Stated differently, we cannot find a "reasonable probability that, but for the errors of counsel, the result would have been different." State v. McCown (2006), Franklin App. No. 06AP157, ¶ 43. See, also, State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus; State v. Murphy (2001),91 Ohio St.3d 516, 559 (Justice Cook concurring — "the standard for prejudice under the plain-error rule differs from the standard for prejudice in an ineffective-assistance-of-counsel claim"). Therefore, Hammond has failed to satisfy the second prong of the Strickland test. Consequently, Hammond did not have the ineffective assistance of counsel.
 {¶ 33} Accordingly, we overrule Hammond's third assignment of error. Having overruled all of Hammond's assignments of error, we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 14 
 JUDGMENT ENTRY
It is ordered that the judgment BE AFFIRMED, and Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion to
Assignments of Error I II; Concur in Judgment Only to Assignment of Error III.
[1] Hammond originally asserted four assignments of error but withdrew one of them. See Hammond's reply brief.